## GORDON et al. v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted March 6, 1923. Decided May 7, 1923.)

No. 3938.

1. **Criminal law ⬅629—Objection that witness was not on list furnished accused may be waived.**

Objection that a witness called for the prosecution was not on the list furnished by the government, as required by Rev. St. § 1033 (Comp. St. § 1699), may be waived, since the provision is one for the benefit of accused, and he is deemed to have waived it, if he makes no objection when the witness is called to testify.

2. **Criminal law ⬅629—Witnesses used in rebuttal need not be included in list furnished accused.**

Rev. St. § 1033 (Comp. St. § 1699), requiring the government to furnish accused with a list of witnesses, does not apply to witnesses who are called in rebuttal only.

3. **Witnesses ⬅388(10)—Cannot be impeached by contradictory statements, before specific foundation has been laid.**

A witness cannot be impeached by contradictory statements made by him in conversation with another, until his attention has been called specifically to the former statements, with particularity as to the time, place, and circumstances, so that he can deny or explain them.

4. **Criminal law ⬅757(7)—Charge on weight of testimony of witness willfully testifying falsely approved.**

A charge that, if the jury found any witness had willfully and falsely testified to a matter within his knowledge, they were at liberty to disregard his testimony entirely, or in part, but were not required to do either, was not subject to objection as permitting the jury to take part only of the testimony, without requiring them to find willfully false testimony.

5. **Witnesses ⬅350—Accused can be cross-examined as to previous convictions, without record thereof being at hand.**

Code, § 1067, permitting previous conviction to be given in evidence to affect the credit of a witness, either on cross-examination or by evidence, and permitting proof of the conviction by certificate under seal of the clerk of the court wherein the conviction was had, does not prohibit the cross-examination of accused as a witness in his own behalf as to former convictions, though the government did not have at hand a certificate of such convictions, and was satisfied with the admissions of accused.

6. **Criminal law ⬅1169(7)—Testimony as to admissions by accomplice held harmless.**

Where testimony as to admissions by an accomplice jointly indicted with defendants was received without objection before the case was nolled against the accomplice, and then no motion was made to strike it out, but the court charged the jury to disregard it, and thereafter the accomplice on the stand as a witness repeated the substance of the admissions, defendants were not prejudiced by the evidence of the admissions.

7. **Criminal law ⬅824(8)—Defendant must request instruction limiting effect of evidence admissible only against codefendant.**

Where two defendants were on trial, and evidence was admitted which was competent against only one of them, the other cannot complain of error in failing to limit the effect of the evidence, where he did not bring the matter to the trial court's attention, and ask to have its effect limited.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Criminal law** ⊖⟹1169(7)—**Evidence of declarations of codefendant held not prejudicial.**

Evidence of declarations by codefendant showing guilt of both defendants, made out of the presence of the objecting defendant, was not prejudicial to the latter, where similar declarations made in the presence of the objecting defendant were also in evidence.

9. **Criminal law** ⊖⟹1038(1)—**Objections to charge must be pointed out at the time.**

The Court of Appeals is not required to consider objections to the charge, even in a capital case, where counsel for accused did not point out to the court below the objection made on appeal.

Appeal from the Supreme Court of the District of Columbia.

Roy Gordon and another were convicted of murder, and they appeal. Affirmed.

Irving Williamson, S. D. Truitt, and N. C. Turnage, all of Washington, D. C., for appellants.

Peyton Gordon and J. H. Bilbrey, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

SMYTH, Chief Justice. Rufus Gordon was jointly indicted with Roy Gordon and Aloysius Chase for the murder of Simon Miller. The Gordons were convicted. Rufus was sentenced to be hanged, and Roy to be imprisoned for life. The case against Chase was nolled.

The Gordons are brothers, and Chase is a brother-in-law of theirs. In September, 1919, the three being together at the home of the Gordons' mother, 1621 Twelfth Street Northwest, Rufus said to the others that he had a good gun, and suggested that they go out and make some money. They started, and when they reached the sidewalk he declared that he was going to hold up and rob somebody, and that he wanted them to watch. They went to the corner of Lamont street and Sherman Avenue Northwest. When they arrived there, Rufus told his companions to wait. Roy and Chase crossed the street and waited a little while. As they waited, a woman was seen to go into a grocery store on the corner. After she came out, Rufus Gordon went in. A minute later a shot was heard. Roy and Chase ran down the street together, while Rufus ran out of the store and into a nearby alley. The shot was heard by several persons in the neighborhood, and immediately afterwards the dead body of Miller was found behind the counter in a pool of blood, with a bullet hole in the neck. Within 10 or 15 minutes before the shot was fired, the Gordons were seen and recognized in the neighborhood of Miller's store. The next day after the shooting Rufus Gordon told Chase that he shot the man because the latter made a dive as if he was reaching under the counter for a pistol. The Gordons bring the case here, in forma pauperis, for our review, and assign eight errors.

[1] Appellants allege that the court erred in permitting Chase to be used as a witness by the state, since his name and address did not appear in the list of witnesses served upon them. They contend that under section 1033, R. S. (Comp. St. § 1699), the government was re-

⊖⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

quired to deliver to them two days before the trial a list of the names and addresses of the witnesses to be used against them. The statute does require this, but it is for the benefit of the defendant, and he may waive it if he sees fit; and he. will be regarded as having done so unless he makes objection when the witness takes the stand. It was so decided by the Supreme Court of the United States in Hickory v. United States, 151 U. S. 303, 307, 14 Sup. Ct. 334, 38 L. Ed. 170. There, as here, the defendant did not object to witnesses testifying whose names had not been furnished to the defendant. The court, after calling attention to this fact, said it would have been error to have allowed them to testify if defendant had objected; "but," added the court, "we think he did not do that here, and that the defect was waived." In answer to the suggestion that the defendant objected as soon as he discovered that the witnesses' names were not on the list furnished to him before the trial, the court said, "Counsel ought not to sit by and listen to the testimony in chief of a witness before inquiring whether his name has 'been furnished to the defendants," and ruled that no error had been committed in permitting the witness to testify.

New Hampshire has a statute similar to section 1033, and construed it as extending a privilege to the defendant which he waives by not objecting at the time a witness is called. In discussing the point the court expressed itself thus:

"The statute was intended to secure to persons indicted means of information which would enable them to make their defense, and not to furnish them an exception to be shrewdly used as a means of escape from justice." Lord v. State, 18 N. H. 173, 176.

Perhaps counsel in the instant case did not object because they were of opinion that the testimony of Chase would be more favorable to their clients than to the state. If so, they took their chances and are bound by the result.

[2] Three witnesses besides Chase, whose names were not furnished to the defendants, as required by section 1033, were permitted to testify, and complaint is made of this fact. But they were called in rebuttal only, and the statute does not apply to such witnesses. It was so held in Goldsby v. United States, 160 U. S. 70, 76, 16 Sup. Ct. 216, 40 L. Ed. 343, wherein it was said that, if it did, it would 'be impossible to conduct any trial. This decision has not been reversed or modified, and it states the law of this jurisdiction at the present time.

[3] The defendants offered to prove by a witness that, in a conversation between Chase and their counsel, Chase stated that he had not seen Rufus Gordon for three or four years, and that he knew nothing about the killing of Miller. The offer was objected to, and the objection was sustained on the score that no proper foundation had been laid for the question which preceded the offer. Chase had not been specifically interrogated with respect to the matter when he was on the stand. It is a well-settled principle that a witness cannot be discredited or his hostility or bias shown by proving statements made by him outside of court which do not harmonize with the statements made by him on the witness stand, until his attention has been called specifically to the former statements, with particularity as to time, place, and

circumstance, so that he can deny or explain them. Chicago, Milwaukee & St. Paul Railway Co. v. Artery, 137 U. S. 507, 11 Sup. Ct. 129, 34 L. Ed. 747; The Charles Morgan, 115 U. S. 69, 5 Sup. Ct. 1172, 29 L. Ed. 316; Ayers v. Watson, 132 U. S. 394, 10 Sup. Ct. 116, 33 L. Ed. 378. Chase was in court. No application was made for leave to recall him, for the purpose of laying the proper foundation, after the court had sustained the objection. There was no error in the ruling.

Counsel urge that in no part of the charge of the trial justice was the jury told that there was a presumption of innocence which attended the appellants throughout the trial, and that the failure to so inform the jury is an error which affected the substantial rights of the defendants. But it was admitted at the bar that this claim is not supported by the record, which shows that the jury was fully instructed upon that point in the first and second requests made by the defendants, and granted by the court.

[4] It is said that the trial justice told the jury that they could "take part of what a witness says as the truth and * * * another part as not being true, without stating to them that, if they should find that any witness had sworn falsely to a matter within the knowledge of the witness, with willful intent, they were at liberty to disregard the whole of the evidence." But the bill of exceptions is against counsel on that point. According to it the court charged the jury that, if they found that any witness had willfully and deliberately testified falsely to any material fact in the case, they were at liberty to disregard his testimony entirely or in part, but were not required to do either. From this it is clear that the learned trial justice did in effect what counsel say he should have done.

[5] When on the witness stand, the defendant Rufus Gordon was interrogated by the prosecuting attorney as to whether he had been convicted in the police court on several occasions of offenses against the law. He answered that he remembered having been convicted on one occasion of petty larceny and on another of robbery, but did not remember having been convicted of the other offenses about which he was questioned. He now urges that the court erred because, under section 1067 of the Code, the right to inquire as to such facts on cross-examination exists only when a court certificate of the convictions "is at hand and to be offered." No objection was made by him on this ground at the time the questions were propounded, or at any other time. But, even if objection had been made, it would have been the duty of the court to overrule it. The section of the Code referred to provides in part that the fact of previous conviction may be given in evidence to affect the credit of a witness, "either upon the cross-examination of the witness or by evidence aliunde, and the party cross-examining him shall not be concluded by his answers as to such matters. In order to prove conviction of crime it shall not be necessary to produce the whole record of the proceedings containing such conviction, but the certificate, under seal, of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient." According to this the certificate is necessary only in order to prove previous convictions where the defendant be-

ing examined denies the convictions. Here there was no effort made to prove the convictions which he said he did not remember. The government rested satisfied with his admissions of two convictions, one for petty larceny and the other for robbery.

[6] O'Brien, a police officer, who had arrested Chase, testified to certain statements made to him by the latter with respect to the part which Chase and the two Gordons had taken in the killing of Miller. No objection was made to his testimony, nor is the admission of it assigned as error. After his testimony the case against Chase was nolled, and the latter was called as a witness for the government. Even then no motion was made to strike out O'Brien's testimony on the ground that it was not admissible as against the Gordons, or on any other ground. But at the close of the case the court instructed the jury that they should entirely disregard the statements attributed to Chase by the witness O'Brien. Besides, when Chase was called as a witness, he repeated in substance what O'Brien had said that he (Chase) had told him when O'Brien had him under arrest. Consequently no prejudice could have resulted from O'Brien's testimony.

[7, 8] The Ransome witness, former wife of Roy Gordon, testified that she was at the home of the Gordons about 8:30 on the night of the murder; that the two Gordons and Chase, after having provided themselves with dark clothes and caps, went out saying that they had to have some money and were going to get it; that Roy returned that night at about 11:30; that he was very nervous, and, upon being asked what was the matter, replied that his brother (Rufus) had shot a man at the corner of Lamont street and Sherman avenue; that Rufus went into a store on the corner while they, he and Chase, stayed outside; that the next morning she met the Gordon brothers and Chase; that she read in a newspaper that the man who had been shot the night before had died; that Roy said to Rufus, "That man you shot last night is dead;" and that Rufus hung his head and looked very worried. This testimony was certainly competent as against Roy Gordon, and as such was admissible. So much of it as related to what was said in the presence of Rufus was admissible against him. If he conceived that the other part was injurious, he should have brought the matter to the attention of the court and asked to have its effect limited to Roy. Having failed to do this, he cannot now complain. Commonwealth v. Wunsch, 129 Mass. 477; Wills v. State, 74 Ala. 21, 25. Even if he had objected, we cannot see how the testimony could have prejudiced him, in view of what was said in his presence.

[9] It is argued that the court in its instruction with regard to the meaning of "purpose" and "intent" was not clear, and that the instruction had a tendency to confuse rather than enlighten the jury, thus prejudicing the defendants. We might dispose of this objection by saying that we are not required to consider it, because counsel did not point out to the court below wherein its instruction was confusing. A party who thinks a charge erroneous in any respect and remains silent will not be heard to point out error after the trial. Price v. Pankhurst, 53 Fed. 312, 313, 3 C. C. A. 551. In Alexander v. United States, 138 U. S. 353, 355, 11 Sup. Ct. 350, 351 (34 L. Ed. 954), where the

death penalty had been imposed it was urged that the lower court had made an erroneous ruling with respect to the method pursued in impaneling the jury. The defendant made no objection at the time. For this reason the Supreme Court of the United States refused to consider the point, saying:

"It is the duty of counsel seasonably to call the attention of the court to any error in impaneling the jury, in admitting testimony, or in any other proceeding during the trial by which his rights are prejudiced, and in case of an adverse ruling to note an exception."

To the same effect is Lewis v. United States, 146 U. S. 370, 379, 13 Sup. Ct. 136, 140 (36 L. Ed. 1011), wherein the defendant failed to object to an instruction given by the court. The Supreme Court said:

"Whether the language of the learned judge went beyond the verge of propriety we are not called upon to consider, as no due exception was taken at the trial, and no opportunity was therefore given the court to modify the charge."

See, also, the decision of the Circuit Court of Appeals for the Sixth Circuit in Ewing v. United States, 240 Fed. 241, 253, 153 C. C. A. 167.

Notwithstanding this, we have looked into the instructions of the court upon the two subjects mentioned by counsel for the defendants, and we find that there is nothing therein which supports the statement that the instructions were confusing. The court defined what is meant by "purpose" and "intent," and then very clearly instructed the jury as to what was necessary to establish those things. We cannot believe that the jury had any difficulty in understanding the court's meaning.

We have scrutinized the record in this case for the purpose of determining whether or not the defendants were accorded a fair trial according to law, and we are convinced that they were. Finding no reason for disturbing the judgment of the trial court, it is affirmed.

Affirmed.