## GRACE et al. v. ELLERMAN–BUCKNALL S. S. Co., Limited.

(Circuit Court of Appeals, Third Circuit. September 10, 1926.)

No. 3480.

**1. Negligence ⬤⟿134(11).**

Evidence *held* to sustain finding. that fire which damaged ship was caused by stevedores building fire in adjoining hold.

**2. Admiralty ⬤⟿118—Finding by judge, who saw the witnesses, should stand, unless clearly against the evidence.**

Finding of fact by trial judge, who saw and heard the witnesses, should not be disturbed by an appellate court, unless clearly against the evidence.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in admiralty by Thomas J. Grace and others, trading as John Grace's Sons, against the Ellerman-Bucknall Steamship Company, Limited. Decree for respondent, and libelants appeal. Affirmed.

Howard M. Long, of Philadelphia, Pa., for appellants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, and Rawle & Henderson, of Philadelphia, Pa. (Thomas F. Mount and ·Joseph W. Henderson, both of Philadelphia, Pa., John M. Woolsey, of New York City, and Francis Rawle, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The steamship City of Edinburg, a British vessel, arrived at the port of Philadelphia in February, 1923, loaded with chrome ore and wool. The appellants, who are stevedores, unloaded the cargo, and their charge for so doing was $5,-130.38. They were engaged in unloading on a bitter, cold night, and, appellee says, built a fire in hold No. 5. Some time thereafter a fire broke out in hold No. 6. This is alleged to have resulted from the fire in hold No. 5, or from an unknown cause. The appellee contends that the fire in hold No. 6 was due to the fire in hold No. 5, and it therefore withheld $1,350 from the moneys due them to cover the estimated damage it did to the vessel. The ·stevedores, on the other hand, contend that there was no fire in hold No. 5, that the fire in hold No. 6 was of unknown origin, and that they were in no way responsible for it or the damage resulting therefrom. Consequently they filed a libel to recover the $1,-350 withheld. · The actual cost of repairing

the vessel was $1,418.54, which was $68.54 more than was estimated and withheld, and for this the appellee filed a cross-bill.

The learned trial judge found that the appellants were "responsible for the fire damage," which was equal to "the unpaid part of the stevedores' bill," and so dismissed the libel. He also dismissed the cross-libel, because "there is always a probability that repairs will include more than the damage." The stevedores appealed to this court. We have therefore for determination pure questions of fact: Did the appellants build a fire in hold No. 5, and were the fire and damage done in hold No. 6 the result of the fire in hold No. 5? If they were, the decree should be affirmed; if they were not, it should be reversed.

[1] The fire occurred in the early morning of February 19, 1923. On the afternoon of the same day the ship notified the stevedores of its claim against them for damages, and that enough of their money to cover repairs would be withheld. The evidence clearly establishes that the stevedores made a. fire in hold No. 5. Alexander Nicholson, at the time of the fire, was quartermaster on the vessel; but he was not in the employ of the vessel at the time of the trial. He testified that he saw the fire in hold No. 5 at about 3:30 in the morning, and that several of the stevedores were present by the fire, and that "he went down and told them to put the fire out; they said it could do no harm." So he and Ralph Longstaff, the second officer on the vessel, put it out by means of a hose.

Longstaff said that: "About 3:30 a. m. on the 19th of February the quartermaster reported to me that the stevedore's men had a large fire in No. 5 hold in starboard side aft against the steel bulkhead near pipe casing. He ordered them to put the fire out, but they refused; so I went along to No. 5, but the fire was practically out. It was just smoldering, but the pipe casing had started to blaze then. There was the quartermaster, Nicholson. I told the fourth engineer, Airlie, to put the water on deck. He returned immediately and told me he was unable to do so, as the water pipes were frozen. We therefore got the shore hose started with the assistance of the stevedore's men. Then I called the ship's crew. I do not know the names of the stevedores actually employed. I observed smoke coming out of No. 6 hold, and got the shore fire brigade down. When I went into the poop space and looked into No. 6 hold, I could see a fire raging in the vicinity of the wooden pipe casing at the starboard forward bulkhead on starboard side. After having extinguished the fire in No. 5,

we brought the hose into No. 6 and commenced playing on the fire. The shore brigade arrived in time to finish extinguishing the flames; the fire being well under control before they arrived."

Judge Dickinson did not believe the testimony of the stevedores that they did not build a fire in hold No. 5. He said: "They rest their defense upon the denials of witnesses, who by their own statements could not admit the fact (of a fire built by them in hold No. 5) without risking their jobs, and upon the testimony of the fire marshal, who examined No. 5 after the fire was out, not with the thought of discovering whether there had been a fire, but whether there still was one, and his examination was made in the dark, aided only by a flashlight."

Did the fire in No. 5 cause the fire in hold No. 6? Longstaff testified that when he arrived the fire in hold No. 5 was nearly out; "was just smouldering, but the pipe casing had started to blaze then." The steel bulkhead between No. 5 and No. 6 was so hot that several plates were buckled, frames were warped, the lead pipes running from the tanks and bilges up to the main deck were melted, and the wood casings were gone. The fire in hold No. 6 was not discovered until about the time the fire in hold No. 5 was put out. When Longstaff first saw the fire in No. 6 hold, it was "raging in the vicinity of the wooden pipe casing at the starboard forward bulkhead on starboard side." If the fire in hold No. 5 caused the fire in hold No. 6, it would have started just where it was first seen in No. 6 hold, in the dunnage wood lying about the bulkhead on the starboard side, just opposite where it was in hold No. 5, the fire being in both holds on directly opposite sides of the bulkhead.

[2] The only other theory accounting for the fire in hold No. 6 is that the crew are alleged to have been in it the morning before, thawing out pipes; but, if the fire had been started at that time, it seems unreasonable that some trace of it would not have been discovered before 3:30 o'clock the following morning. There is no other reasonable explanation to account for the fires than the testimony of the appellee. Judge Dickinson saw many of these witnesses and heard them testify. Facts found by the trial judge, who saw the witnesses, should not be disturbed by an appellate court, unless the error is manifest and clearly against the evidence. The National Dredging & Lighterage Co. v. Turney Transportation Co. (C. C. A.) 281 F. 315; American Merchant Marine Ins. Co. v. Liberty Sand & Gravel Co. (C. C. A.) 282 F. 514;

Low Transportation Co. v. Davis, Director General of Railroads (C. C. A.) 9 F.(2d) 392.

Judge Dickinson found the sum of the damage was equal to the unpaid part of the stevedores' bill. The appellants say that the damages were not properly proved, but the original bill of the Morse Dry Dock & Repair Company was admitted in evidence, which in due course was marked "Paid March 28, 1923. Per R. R. P. Cashier." It has not been shown to our satisfaction that these bills were not paid, or that the damages found by the learned District Judge are erroneous.

Therefore the decree is affirmed.