### THE CLEARY BROS. NO. 61.

### PUBLIC SERVICE ELECTRIC & GAS CO. v. CLEARY BROS., Inc., et al.

#### No. 4786.

Circuit Court of Appeals, Third Circuit.
Sept. 28, 1932.

394

Henry H. Fryling, of Newark, N. J. (Wm. H. Speer and Carl T. Freggens, both of Newark, N. J., of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald McKernan, of New York City, of counsel), for Wayne Transp. Co.

Foley & Martin, of New York City (James A. Martin, of New York City, of counsel), for Cleary Bros.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

Cleary Bros., Inc., filed a libel against the Wayne Transportation Company to recover for damages done to its scow, Cleary Bros. No. 61, while chartered by the respondent, which impleaded the Public Service Electric & Gas Company, hereinafter called the Public Service Company, alleging that it, by negligently failing to furnish the scow a suitable berth, caused the damage, which it aggravated by improperly unloading the cargo of the scow. The Public Service Company denied the allegations of the respondent's petition. The case was tried to the District Court, which held that the injuries to the scow were caused by its grounding as a result of the failure of the Public Service Company to furnish the scow a safe berth. The court entered an interlocutory decree holding the Public Service Company primarily, and the respondent secondarily, liable for the damage to the scow, and referred the matter to a master to ascertain the amount of the damages. The master reported the sum due the libelant, and the final decree was entered accordingly. The Public Service Company appealed to this court.

In July, August, September, and October, 1927, the scow Cleary Bros. No. 61, under charter to the Wayne Transportation Company, was used in carrying coal for the appellant, the Public Service Company, to its stations on the Passaic river, at Essex and Kearny, N. J.

The respondent contends that the scow, when lying, fully loaded, at the Essex station dock, grounded amidships on a falling tide on a bank of hard and uneven material alongside the dock, and that, as a consequence thereof, its bow and stern were unsupported, which caused the laden scow to give way, thus splitting three of its center crossbeams and throwing its contour six or eight inches out of line. The respondent further contends that the damage was aggravated at some later time by the operations of an inexperienced employee of the appellant in discharging the cargo of the scow. All this the appellant denies, and says that the respondent has failed to establish its contention by a fair preponderance of the evidence.

The libelant proved the charter party, the delivery of the scow in good condition, its return in a damaged condition, and rested.

The respondent's case is largely built upon the testimony of the captain of the scow. He testified as follows:

"A. The boat came up the river was set in under the digger and set on a lump when they were doing the dredging there.

"Q. When was this? A. Some time in August or the last of July. I have not got the dates of it.

"Q. Was she unloaded? A. No, sir; she was fully loaded.

"Q. When she came up? A. Yes, and she was not lightened up.

"Q. Did she ground? A. Yes.

"Q. What were the conditions attending this grounding? A. What?

"Q. How did she come to ground? A.

There was no water for her when the tide fell, and she just sat on a bank and was left there.

"Q. How long did she remain aground? A. A couple of hours. I figure it was around two hours."

He further testified that the scow made one trip during the last of the month of July and three trips in August, 1927, to the Essex station and the disaster occurred on one of these trips; that, although the damage was apparent when the scow's cargo was discharged, he failed to call it to the attention of any one, other than several boat haulers who had no authority; that he made no report of the damage until "sometime later," when he advised her owners; that by frequently using his pumps he managed to keep the scow afloat until she was withdrawn from service in November.

On cross-examination, he testified that it seemed to him that the scow grounded in August, while the appellant was dredging at the dock by the use of a traveling crane.

Albert Bessclievre, an employee of the respondent, testified that he discovered the damaged crossbeams in November, 1927. On cross-examination, however, he declared that he found a large crack in the scow's second crossbeam late in September or early in October, 1927, but that with this knowledge he kept the scow in service until November. Later he testified that he first saw the broken beams when the scow was being repaired at the owner's yard in September.

That is substantially the respondent's case. But the appellant insists that it is insufficient to support the decision reached by the learned trial judge.

This appeal, being in admiralty, is a trial de novo. The Kaiser Wilhelm II, 246 F. 786, 788, L. R. A. 1918C, 795 (C. C. A. 3); Irvine v. The Hesper, 122 U. S. 256, 7 S. Ct. 1177, 30 L. Ed. 1175. We are mindful that facts found by the trial judge should not be disturbed by an appellate court, unless the error is manifest and clearly against the evidence. Grace et al. v. Ellerman-Bucknall S. S. Company, Limited, 14 F.(2d) 902, 903 (C. C. A. 3). But in every case it is the duty of the complaining party to prove his case by a fair preponderance of the evidence. Stevens v. Maritime Warehouse Company, 263 F. 68 (C. C. A. 2).

The respondent alleged, as above stated, that during the months of July and August, 1927, the scow "was allowed on the falling tides to ground and rest on a hard and uneven bottom, and that during the unloading of the cargoes by the employees of the Public Service Gas & Electric Company the said scow sustained considerable damage, due to the negligent and careless manner in which the employees of the Public Service Gas & Electric Company unloaded the same." It was the duty of the respondent to establish by a fair interpretation of the evidence those allegations of its petition, and the question is whether or not it did so.

The grounding of the scow is denied by the appellant. The stevedore at the Essex station who was in charge of the unloading and inspection of the scows testified to that effect. The stevedore's assistant had not heard of the scow going aground at the dock.

The conditions existing at the dock were shown. The appellant attempted to keep fifteen feet of water along the length of the dock at low tide, though sometimes there was only fourteen feet. The scow drew thirteen feet when she was fully loaded. The stevedore admitted that he knew of a "slight hump" in front of the dock, but the dredging engineer of a company that was engaged to dredge in front of the dock testified that in January, 1928, a large amount of silt or soft mud was removed, but that no uneven surfaces or hard substances were encountered, and that the bottom was even when this dredging was going on, having the usual contour downward from the dock toward the channel of the river.

There was no dredging, according to the appellant's witnesses, at the Essex station during the periods when the scow was at the dock. The captain declared that the boat was aground when the appellant was attempting to dredge along its dock, but its chief engineer and the stevedore (after refreshing his memory from his station reports) testified that there was no dredging until August 24, 1927. It appears that the scow made its last trip to the Essex station on the 20th of August.

The appellant's witnesses testified that the scow was inspected on arrival and departure at both the Essex and Kearny stations, but that the damage to the beams was not discovered until October 27, 1927, when the two Kearny station inspectors, while standing in the bow of the scow, noticed the damaged beams were bulging. One of the witnesses stated that the damage might not be noticed unless closely inspected because of the position of the beams; yet the captain of the scow said the damage was apparent and could be seen by a casual inspection. The scow was

not removed from service until November 5, 1927.

 Considerable importance was attached to the question of the admission of the boat reports of the Public Service Company. They contain a statement of the condition of the scow on its arrival and departure at the Essex and Kearny stations from July 2, 1927, to November 1, 1927, and directly affect the weight to be given to the testimony of the captain whose attention was called to them when he was being cross-examined. The captain stated that he had signed them, and they were marked for identification. Later in the case, counsel offered to introduce the reports in evidence, but the respondent objected because it had not had an opportunity to cross-examine the captain as to his signature, and further because they were self-serving. The Public Service then called and examined as witnesses the stevedore and persons who prepared and signed them along with the captain of the scow. The reports from July 18 to November 1, 1927, were then offered in evidence. The court refused to admit them, saying: "Unless there is something particular in them that is intended to contradict Captain Gordon, to which his attention was specifically called, they might be relevant. I think they are self-serving."

The learned trial judge correctly stated the rule laid down in The Charles Morgan, 115 U. S. 69, 77, 5 S. Ct. 1172, 29 L. Ed. 316, which requires that the memory of the witness who is to be impeached shall be so refreshed by the necessary inquiries as to the circumstances as to enable him to explain, if he can and desires to do so, the prior contradictory declarations. We think he was right in holding that the proper foundation was not laid to permit the reports to be admitted in evidence as prior contradictory statements.

 His conclusion that they were inadmissible because they were self-serving statements would also be correct if they had been made, and signed by the Public Service Company alone, but they were not. The captain, representing the respondent, assisted in making them and signed them. To that extent they were the reports of the respondent, and so may be admitted as admissions against interest.

 This being a trial de novo, we will admit and consider them. They tend to discredit the captain's testimony, as they are inconsistent with his claim that the scow grounded at the Essex station some time late in July or August, 1927, causing the crossbeams to be split.

The reports for July and August, 1927, while referring to other damage, make no mention of injuries to the three center crossbeams. The report of October 27, 1927, states that these crossbeams were found to be cracked on the arrival of the scow at the Kearny station on that date. The appellant's inspectors testified that this was the date on which the damage was first discovered; previous inspection not having revealed any such damage. The reports tend to establish the correctness of this testimony.

It appears that the alleged improper unloading occurred on another trip some time after the supposed grounding. There is no proof of the fact that the damage was aggravated. Apparently the only testimony relating to an improper loading was that of the captain of the scow on cross-examination when he stated that a new man who was operating an unloading crane discharged only 15 tons of the cargo from one hatch while the other operator removed 200 tons from another hatch. The respondent does not refer to the question in its brief, nor did the trial court in its decision. It is not necessary that we consider it, as we are of the opinion that the respondent by a fair preponderance of the evidence has failed to show that a grounding occurred at the Essex station late in July or August, 1927.

The testimony of the captain of the scow is contradicted by the station reports and denied by the appellant's witnesses. It is unusual, too, that he should fail to report promptly such serious damage, or make a record of it, and further that this damage, apparent to the captain, should not have been revealed by the frequent inspections of the scow until the month of October. The captain's testimony as to the negligent berthing is outweighed by the affirmative testimony of the appellant as to the conditions existing at the dock. Indeed, the respondent's case at its best is so vague and uncertain as to destroy its worth.

The decree against the appellant is reversed, and a decree for the libelant against the respondent will be entered.