**BURTON et al. v. UNITED STATES.**

No. 12377.

United States Court of Appeals Fifth Circuit.

July 18, 1949.

Rehearing Denied Sept. 23, 1949.

---

Hugh M. Wilkinson, Robert S. Link, Jr., Warren O. Coleman, Frank B. Ellis, New Orleans, La., Frank J. Lonney, Shreveport, La., and Gordon B. Golsan, Jr., Mansfield, La., for appellant.

Robert Weinstein, Sp. Asst. to U. S. Atty., J. Skelly Wright, U. S. Atty., Nicole E. Simoneaux, Lansing L. Mitchell, John N. McKay, and Amos L. Ponder, Jr., Asst. U. S. Attys., New Orleans, La., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The indictment charged a conspiracy under Section 37 of the former Criminal Code, 18 U.S.C.A. § 88, among the defendants William T. Burton, Joe T. Cawthorn, Marcel F. LaBranche, and James A. Noe, and three others not indicted, Edwin H. Oliveira, Barnard R. Hughes and John Joseph Astorias. Oliveira and Astorias were principal witnesses for the prosecution, but Hughes, though subpœnæd by both sides, was ill and did not testify. Noe was acquitted. Burton, Cawthorn and LaBranche were convicted and each sentenced to be imprisoned for two years and to pay a fine of $10,000; and they several-ly appeal. Each is represented by separate counsel, and makes separate specifications of error; but the principal points are the same: 1. The indictment is vague and confused; and charges two conspiracies in one count. 2. Error in refusing a continuance. 3. Denying motions for acquittal. 4. Restricting cross-examination of juror Adams. 5. Exclusion of grand jury testimony of Astorias. 6. Exclusion of vindictive threats by investigators for United States. 7. Coercion of verdict. 8. Charge of the court. 9. No conspiracy but bribery proven.

1. The indictment, returned just before the effective date of the Rules of Criminal Procedure, 18 U.S.C.A., is somewhat repetitious, but not vague or confused. It charges plainly enough that Burton was to be tried in June, 1945, in the district court for the Eastern District of Louisiana for the crime of wilfully evading income taxes, and that the seven named persons conspired to commit offenses against the United States, to-wit, corruptly to endeavor to influence, obstruct and impede the due administration of justice in said criminal prosecution; and to defraud the United States concerning its governmental function of considering and deciding through the petit jury of said court said criminal prosecution, by the faithful, disinterested, and unbiased judgment of the petit jury, free from corruption, improper influence and pecuniary interest in the success of the defendant; that the means planned was that through intimacies among the named persons a juror in the trial, LaBranche, would be approached by Oliveira and Oliveira would be approached by Cawthorn, to influence the juror by offering money to LaBranche in return for favorable action, and LaBranche would agree to vote for Burton's acquittal; that Burton would agree to pay money to Oliveira and LaBranche therefor; and that Astorias would pay over the money to them for Burton; that Noe would persuade Dinghaus, another juror, to be favorable to Burton; that Noe and Cawthorn would approach one Walmsley to use his influence with other members of the jury panel to be favorable to Burton if they were taken as jurors; and that

Noe and Burton would cause Hughes similarly to approach Groffman, another member of the jury panel. Nine overt acts done to effect the object of the conspiracy are charged, including the payment of money to LaBranche and his division of it with Oliveira. This sets forth a general conspiracy to endeavor to obstruct justice, and not confined to the juror LaBranche, which is criminal under Section 37 under both of its clauses. It was an offense against Section 135 of the Criminal Code, 18 U.S.C.A. § 241, to "corruptly * * * endeavor to influence * * * in any court of the United States * * * any grand or petit juror * * * in the discharge of his duty * * *." It was also a defrauding of the United States of its governmental right to have an unimpeded and unbiased jury to hear its case, equally as though a district attorney, judge, witness or other functionary had been involved.[1]

But it is argued that there is fatal duplicity because of Criminal Code § 136, 18 U.S.C.A. § 242 [see 18 U.S.C.A. § 371], which makes it an offense for two or more persons to "conspire * * * to influence the verdict, presentment, or indictment of any grand or petit juror in any such court" of the United States. There is, however, some difference. Section 136 does not use the word "endeavor" which occurs in Section 135 and in the indictment; and it does not require the doing of an overt act to complete the crime as Section 37 does and as the indictment alleges. We think the indictment is to be referred to Sections 37 and 135, as the district court held, rather than to Section 136.

■ Section 136 and Section 37 may overlap, but neither was intended to repeal or supersede the other. Sections 135 and 136 were amended by the Act of June 8, 1945, 59 Stat. 234, during the trial of Burton for income tax evasion, but the amendment did not affect the criminality of the conspiracy which, as is alleged, had

already been formed and overt acts executed. These sections were repealed by the Act of June 25, 1948, Sect. 21, 62 Stat. 862, which revised Title 18 of the Code, but existing rights and liabilities were expressly preserved. In the revision Sect. 371 reenacts the substance of former Section 37, and Sect. 1503 reenacts the substance of former Section 135, but former Section 136 seems to have been dropped as superfluous. This course of legislation, though subsequent to the indictment, strengthens our conviction that Section 37 was at all times a sufficient basis for such an indictment.

■ This indictment alleges a conspiracy to influence more than one juror, but that does not make it duplicitous if there was but one conspiracy. It is well settled that the conspiracy may contemplate several offenses, and may be alleged as broadly as the conspiracy really was. Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561; United States v. Manton, supra.

■■ 2. Hughes was subpœnæd as a witness by the prosecution and defense. The trial was first set for Oct. 14, 1946. Prior thereto one of the defendants, Cawthorn, moved to take the deposition of a witness Blackman shown to be suffering with a heart attack and unable to undergo excitement. Burton and LaBranche joined Cawthorn in a motion for continuance. The case was reset for trial on May 5, 1947. The prosecution and defendant Noe then moved to continue the case because of the illness of Hughes, due to a heart attack. The case was set for June 23, 1947, and an order made for the taking of the deposition of Blackman. Hughes continued to be ill and the trial was put off till May 3, 1948. A week prior to that date Burton made a further motion for a continuance because of the illness of Hughes. Oral evidence was heard from the family physician of Hughes who was treating him, and he thought that Hughes could safely give his depo-

[1] Sneed v. United States, 5 Cir., 298 F. 911, involving the corruption of a juror;* Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, a United States Attorney; United States v. Manton, 2 Cir., 107 F.2d 834, a judge; Outlaw v. United States, 5 Cir., 81 F.2d 805, a witness. See also Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569, 17 Ann.Cas. 1112.

sition if the excitement of the court room was eliminated, but that he could not safely testify otherwise for an indefinite period in the future. Two other physicians who had not treated or examined Hughes or his electrocardiagrams but had information of his progress testified they thought he could likely testify after ninety days, and that he could presently give his deposition. The court denied the motion. No move was made to take the deposition of Hughes. Under these circumstances the general rule applies that the grant of a continuance rests in the sound discretion of the trial judge. Isaacs v. United States, 159 U.S. 487, 16 S.Ct. 51, 40 L.Ed. 229. Burton could readily have taken the deposition of Hughes, though the prosecution could not. The evidence on the trial was not closed till May 14. See Heflin v. United States, 5 Cir., 132 F.2d 907; Bell v. United States, 5 Cir., 129 F.2d 290; Samples v. United States, 5 Cir., 121 F.2d 263.

◼◼◼ 3. The motions for acquittal were properly denied. The evidence introduced by both sides was voluminous. That for the government, if believed, tended to prove what was alleged in the indictment. It is true that the three leading witnesses, Oliveira and Astorias and Walmsley admitted to not having told to the Grand Jury under oath on their first two appearances all that they were testifying in the trial, and had made somewhat conflicting statements initially to the investigators, and had finally testified to the Grand Jury and in the trial fully because of conscience or fear. Their credibility under all the circumstances was for the jury. So also was the credibility of the defendants, who all testified, except LaBranche. Burton admittedly was a self made man, wealthy, and prominent in business and politics. Noe was recently governor of Louisiana, and had been financially saved by Burton. Cawthorn served in the State Legislature and there met Burton; was his lawyer in other cases and represented him in both his trials for income tax evasions, both resulting in mistrials, but because of a skin trouble he did not participate in the court house actively in the last trial, though present in New Orleans and engaged in arranging the evidence. Hughes had been foreman of the jury in a former trial and was receiving money from Burton at about the time of the last trial. Oliveira and LaBranche were on the jury panel and Oliveira testified that before he was challenged and LaBranche was accepted on the jury they had agreed, hearing rumors that money was to be used, that if either was taken on the jury what was received by either or both would be split between them; that after LaBranche was accepted on the jury he made contact with Cawthorn, and through him with Burton, agreeing for LaBranche that $1500 was to be paid the two, which Burton left in a package with Astorias, chef at the hotel, and which finally came to LaBranche for division. Astorias corroborated as to his receipt of the money from Burton and its delivery to LaBranche, though he denied knowing what it was for, how much it was, and that it had any connection with the trial. Burton admitted having brought $70,000 to New Orleans as a "fighting fund". Walmsley testified to Cawthorn and Noe having sought to get him to approach jurors known to him, and that Cawthorn offered him $1,000 therefor, as he understood it, but he said he was not interested. LaBranche in the jury room voted consistently for Burton's acquittal and there was a mistrial. This bare summary shows the color of the case for the prosecution. The question of guilt was for the jury.

◼◼◼ It is specially contended for Cawthorn that the only evidence against him is that of Oliveira who was admittedly an accomplice, and that he is not corroborated, but contradicted by an unimpeachable alibi showing Cawthorn was not present in New Orleans on the dates Oliveira said he approached and agreed with Cawthorn. It is well settled in the federal courts that the testimony of an accomplice though uncorroborated may be the basis of conviction if the jury under all the circumstances believes it. But in this case Oliveira was corroborated by Astorias, on the important fact that money was sent by Burton to LaBranche as Oliveira testified Cawthorn and Burton had agreed would be done. Though Astorias was alleged in the indictment to be also a con-

spirator, he flatly denied it, and there is no proof that he was. As to the alibi, it was very well established that Cawthorn was not in New Orleans the latter half of the first week of the trial, which lasted three weeks, and Oliveira did date two of his interviews in this period of absence, but when pressed he said he was uncertain about the exact dates. The validity of an alibi frequently turns on mistakes in dates. This again was a jury question. Moreover, Walmsley's testimony, he not being in any degree a conspirator, tends to show Cawthorn was active in a general plan to influence jurors other than LaBranche. Cawthorn's guilt was a jury question. Noe was acquitted, though there was evidence against him, too, but it is unnecessary to examine it closely.

■■■ 4. One of the jurors, Adams, testified without objection that LaBranche voted not guilty throughout the deliberations of the jury. On cross-examination the question was asked how many other jurors so voted. On objection the court ruled that, because of the juror's privilege, it would be improper to ask how other particular jurors voted. The witness was then asked if he remembered how eight named men voted, and he answered he did. The further question was put whether any of them, without saying who, took a position on the first ballot and did not change, and the answer was, "There were some changes. There were changes from the original ballot." No other questions were asked. The juror's privilege, and its exception when a juror is himself on trial for misconduct in connection with his service, were considered in Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993. The ruling above recited was in accord with the Clark case.

■■■ 5. As has been stated, Astorias told a different story in his first statement to the investigators and his first two appearances before the Grand Jury, as he admitted on his cross-examination, giving fully his reasons for enlarging his testimony which included pressure in the Grand Jury room and his fears of being himself prosecuted for tax evasion. On request of counsel for defendants the court

required the secret record of the proceedings before the Grand Jury and his statement to the district attorney to be produced and suspended the cross-examination of Astorias for two hours that counsel might examine the proceedings. They returned to the court room, interrogated Astorias about only four statements in his testimony, which he admitted making, they marked the proceedings as identified, and Astorias left the city. Near the conclusion of the case defendants' counsel offered in their entirety the three records of Astorias' testimony before the grand jury and his original brief statement to the district attorney, making 77 printed pages in all. On objection it was stated the purpose was to show the state of mind of the witness and his motive in testifying and for the purpose of impeaching the witness. The court held, "It is a well settled principle that a witness may not be discredited or his hostility and bias shown by proving statements made by him outside the court which do not harmonize with his statements on the witness stand, until his attention has been called specifically to the former statements, with particularity as to time, place and circumstance, so he can deny or explain them." He cited the cases of the Charles Morgan, 115 U.S. 69, 5 S.Ct. 1172, 29 L.Ed. 316; Harbour v. United States, 5 Cir., 54 F.2d 1; Ybor v. United States, 5 Cir., 31 F.2d 42; Conrad v. Griffey, 16 How. 38, 14 L.Ed. 835; Gordon v. United States, 53 App.D.C. 154, 289 F. 552; The Cleary Brothers No. 61, 3 Cir., 61 F.2d 393; R. B. Tyler Co. v. Greenup, 6 Cir., 140 F.2d 896; and Robinson v. United States, 6 Cir., 144 F.2d 392. The brief for the United States presented here adds many cases from other circuits. The rule stated by the court is well established. Not all prior statements by a witness who is not the opposite party are evidence. Those inconsistent with his testimony or showing bias or feeling are admissible as impeachment under the limitation stated by the court. But that does not extend to all that was here offered or to much of it. What is now urged upon us, though not explained to the trial judge, is that the Grand Jury examinations show that Asto-

rias was under pressure about the source of $19,000 of cash found in his safe deposit box on which he had not paid income tax. He was on the first two examinations asked principally about that, and no question was asked or statement made about money left with him by Burton for La-Branche. Astorias fully testified in this trial that he was thus put in fear about his income taxes and got him a lawyer and on the lawyer's advice and in his company he went to the district attorney and told all he knew, and was allowed to pay his income tax deficiency with penalties. There was thus already in evidence without contradiction all that these lengthy documents would tend to show on this line. If there was error in excluding pertinent parts of them offered for this not clearly expressed purpose, we do not think it is reversible error.

■■■ 6. Burton offered to prove that certain revenue agents in 1938 had threatened him about tax matters. Another revenue agent had said to a third party he was going to "shake down" Burton; and an Assistant to the United States Attorney General in Washington after the Burton tax evasion mistrial had said, "I will get this man Burton if it is the last thing I do." Neither of these was a witness in the present trial nor was the named Assistant to the United States Attorney General conducting it. The court correctly held their remarks were irrelevant.

7. The jury retired on the morning of May 15th to consider their verdict. At noon the following day the judge enquired if they had agreed on a verdict and they said no. The judge then gave them verbatim the charge approved by the Supreme Court in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, as it appears in Commonwealth v. Tuey, 8 Cush.,

Mass., 1. In the Allen case where a death sentence for murder had been pronounced, the Supreme Court unanimously upheld this charge in these words: "These instructions were taken literally from a charge in a criminal case which was approved by the Supreme Court of Massachusetts in Commonwealth v. Tuey, 8 Cush. 1.; and by the Supreme Court of Connecticut in State v. Smith, 49 Conn. 376, 386. * * * There was no error in these instructions." [164 U.S. 492, 17 S.Ct. 157.] We cannot say that it was error to give them here. At its conclusion the court asked, "Are there any exceptions to the charge?" None were taken.

8. The charge of the court as a whole is attacked by one defendant along the line of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, and because conspiracy under Section 136 of the Criminal Code was not charged. No objections were made at the time and we think the charge full and fair.

■■■ 9. An argument is made lastly that after the jury acquitted Noe there was nothing left in the case except whether LaBranche was bribed, and that would constitute bribery of a juror and not a conspiracy of any kind. We cannot of course know why Noe was acquitted, whether the jury believed the transactions in which he was sought to be implicated did not occur at all, or whether they had reasonable doubt about his criminal connection with them and with the general conspiracy. We know only that the jury found Noe not guilty and Burton, Cawthorn and LaBranche guilty of the conspiracy set forth in the indictment. There was evidence, if believed, to support the conviction. No reversible error appears. It is our duty to affirm the sentence.

Affirmed.