UNITED STATES of America

v.

Farris Egbert MORRIS, alias Buck Wilkins.

Cr. No. 17937.

United States District Court
E. D. Pennsylvania.

Dec. 2, 1959.

Joseph L. McGlynn, Jr., U. S. Atty., James J. Phelan, Jr., Asst. U. S. Atty., Dept. of Justice, Philadelphia, Pa., for plaintiff.

Jacob Kossman, Philadelphia, Pa., for defendant.

CLARY, District Judge.

This matter is before the Court upon the motion of petitioner, Farris E. Morris, to vacate the sentence imposed upon him by this Court on the 29th day of September, 1954, under the provisions of Title 28 U.S.C. § 2255.

Petitioner contends: (1) that he was never advised by the Court that he was entitled to two attorneys to make his defense as prescribed by Section 3005 of Title 18 United States Code; (2) that he had not been advised that he was entitled to separate counsel from his co-defendant who was also charged with a capital crime; (3) that his counsel refused to call certain witnesses who were vital to his defense which denied him an opportunity to make his full defense; (4) that his counsel informed him that he would not call the two defense witnesses because their testimony might interfere with the defense of his co-defendant John Lorenz; (5) that he was denied the testimony of James Wyman who would have testified favorably that the victim of the kidnapping never protested; (6) that he was denied the testimony of a man from whom the alleged victim rented a boat and that victim was not restrained; (7) that the refusal to call the witnesses set forth in paragraphs 5 and 6 was on the ground that their testimony would not be consistent with the defense of his co-defendant John Lorenz; (8) that he was told by his counsel not to make a scene in the courtroom by bringing to the Court's attention the denial of his witnesses for his defense as he was on trial for his life and such a protest would be weighed against him, and that he might even get

the electric chair if he antagonized the Judge.

Because of the seriousness of these allegations, the Court appointed Jacob Kossman, Esquire, of the Philadelphia Bar, to represent petitioner Morris, without fee, and ordered that the petitioner be brought from Alcatraz, where he was incarcerated, to this District for the purpose of a hearing on the motion. The Court also ordered transcribed all of the proceedings ever had in this Court with respect to the defendant and ordered a copy to be furnished to the petitioner through his counsel.

Petitioner was brought to this District early in August of 1959 and had the opportunity for full consultations with his counsel. A hearing on petitioner's motion was held in this Court on October 13, 1959, at which the petitioner was present with his counsel, and a transcribed copy of said hearing has been furnished to the petitioner.

The chronology of the case in this Court is as follows: A true bill of indictment in four Counts was returned to this Court on August 31, 1954, against defendant Farris Egbert Morris, alias Buck Wilkins, and his co-defendant, John Lorenz, alias Jack John Thomas, Criminal No. 17937, charging: Transportation in interstate commerce of a person abducted or unlawfully detained; transporting stolen motor vehicle in interstate commerce; transporting stolen firearm in interstate commerce knowing same to have been stolen, etc., Count I in violation of Title 18 U.S.C. § 1201; Count II in violation of Title 18 U.S.C. § 2312; Count III in violation of Title 15 U.S.C.A. § 902(g); and Count IV in violation of Title 15 U.S.C.A. § 902(e).

Upon arrest and return to this District both defendants requested the services of the Voluntary Defender of Philadelphia. Both defendants were interviewed by representatives of the Voluntary Defender's Office and the case was called for arraignment on July 21, 1954. At that time Edmund E. DePaul, Esquire, Assistant Voluntary Defender, appeared representing both defendants.

Mr. DePaul stated to Honorable John W. Lord, Jr., the Judge then presiding, that there appeared at that point to be a serious conflict in interest between the two defendants and that the Defender's Office would represent Mr. Morris, but that in his opinion it would be necessary that the Court appoint an attorney to represent Mr. Lorenz. In order to keep the chronology straight it is necessary at this point to interpolate information secured at the hearing of October 13, 1959. On the same day as the arraignment, July 21, 1954, the Defender's Office determined that there was no conflict in interest between the two defendants; that each defendant had the identical defense; that it was a joint defense, and thereafter on September 7, 1954, when the two defendants, Morris and Lorenz, were brought before Judge George A. Welsh for arraignment, the Defender's Office, through John F. Hassett, Esquire, appeared and each defendant pleaded not guilty. Between that date and the date of trial, again referring to testimony introduced at the hearing of October 13, 1959, the Voluntary Defender consulted at various times with the two defendants and learned that there were two men, names unknown, who would be able to testify for the defendants that the victim while in Maryland did not complain to these two witnesses, although he had an opportunity to do so, and did not attempt to escape. Upon receiving this information the Voluntary Defender consulted with the Assistant United States Attorney in charge of the prosecution and learned from the office of the United States Attorney that the victim would testify in accordance with the proposed facts and those facts would not be in controversy. Upon this assurance the Voluntary Defender determined that it would not be necessary for a proper defense to further search for these witnesses since their testimony would be merely cumulative. The case went to trial before the Court and a jury on September 20 and 21, 1954, and the jury returned a verdict of guilty on all four Counts against both defendants, Morris

and Lorenz. The date for sentence was scheduled for September 29, 1954, on which date sentence upon defendant Lorenz was postponed, it having been determined in the meantime that Lorenz instead of being 19 years old, as he had told the arresting Officer, was only 16 years of age and, therefore, had to be treated as a juvenile. The Court on the 29th day of September, 1954, imposed sentence upon defendant Farris Egbert Morris alias Buck Wilkins for a period totalling 25 years imprisonment.

In capsule form, an outline of the crimes for which the said defendants were indicted is as follows: A Police Officer of the City of Philadelphia, on June 23, 1954, detected Morris and Lorenz attempting to steal a car. When the officer approached them Morris put a gun in his back and directed Lorenz to seize the officer's gun, which Lorenz did. Fearful of his life the officer refused to obey Morris' direction to accompany him and when he attempted to escape was shot in the back. Morris and Lorenz thereafter commandeered a taxicab and forced the taxicab driver, one Joseph A. McLane, to drive them in the cab to Maryland, where he was kept captive, although unharmed. Eventually all three were apprehended in Maryland and McLane was released. Fortunately, the Police Officer recovered and was able to testify at the trial of the case.

■ With respect to allegation Number 1 in the petition that the defendant was not advised by the Court (Judge Lord) that he was entitled to two attorneys to make his defense under Section 3005 of Title 18 United States Code, the allegation is completely without merit. Morris selected the Voluntary Defender himself. Assignment of the Voluntary Defender was not made by the Court and no request was ever made by Morris to assign counsel to him. For all purposes, Herman I. Pollock, Esquire, Voluntary Defender, was his private attorney, even though he did serve without fee. There was no violation of any of defendant's rights, as he now claims, and there was no duty upon the Court to in-

form him that he was entitled to counsel under the provisions of Title 18 U.S.C. § 3005.

■ Allegation Number 2 is likewise without merit. The Voluntary Defender hesitated to defend both defendants until he was absolutely certain that there was no conflict in interest between the two defendants, Morris and Lorenz. In so doing he upheld the highest traditions of the profession.

■ With respect to allegation Number 3, what has been said above destroys this contention. The Voluntary Defender properly did not attempt to call witnesses on a noncontroverted fact. The victim McLane testified fully and freely that he kept the happiest mien of any person in the small town of Bristol, Maryland, because he was in desperate fear of his life and was terrified that the slightest misstep on his part would result in instant liquidation.

As to the Fourth allegation advanced, the statement therein made is a falsehood. Mr. Pollock denied under oath making the assertion set forth. Although Morris had every opportunity at the hearing to deny the truth of Mr. Pollock's assertion, he refused to take the stand and deny it.

The Court characterizes allegations Numbers 5, 6 and 7 in the same fashion as it characterizes allegation Number 4, i. e., complete untruths. Mr. Pollock never refused to call the Maryland witnesses on the ground that their testimony would not be consistent with the defense of Lorenz.

Finally, the Court finds allegation Number 8 to be untrue. Mr. Pollock never cautioned Morris not to make a scene in the courtroom with respect to the failure to call witnesses, and he most certainly never stated he might get the electric chair if he antagonized the Judge.

The case was tried on the theory that it was a noncapital case. That fact was thoroughly understood between the United States Attorney and the Voluntary Defender before the case even went to

trial. The victim was released unharmed and the possibility of a death sentence never entered the case.

■ Defendant Morris had expert professional help both at the time of his arraignment and at the time of his trial. After filing his self-written petition, he again has had the highest quality of professional help and assistance in the person of Mr. Kossman. Mr. Morris deliberately chose, despite the opportunity offered by both his counsel and the Court and after a Court recess to permit him to confer with his attorney, not to take the stand and refute, if he could, the testimony of Mr. Pollock. The Court, therefore, can only conclude that Mr Pollock's testimony gave true details of his representation in every minute detail. Mr. Pollock had a complete file of the Defender's representation and was able to answer any question from progress notes made during that representation. His testimony at the hearing demonstrated the complete competence of his representation of defendant Morris at the trial. The only difficulty with Morris is that he shot Patrolman McCaffrey; stole his gun; kidnapped McLane and forced him at gun point to drive him to Maryland where he kept him in captivity. The jury found defendant Morris guilty after a full and fair trial.

However, Mr. Kossman now raises a most interesting question. He advances the legal contention, under the decision of the United States Supreme Court in Smith v. U. S., 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041, decided June 8, 1959, that despite all the foregoing his court-appointed client Morris is still entitled to a new trial on the grounds that Morris did not have the full protection of the law provided by United States statutes; that Morris did not have the advantage of twenty strikes, and that the record failed to show that the defendant had been supplied with a list of veniremen and Government witnesses three days in advance of the trial.

Does the failure of the United States to furnish defendant with a list of veniremen and Government witnesses three days prior to trial, Title 18 U.S.C. § 3432, and the further failure of the defense counsel to request and exercise twenty rather than only ten peremptory challenges, Federal Rules of Criminal Procedure, Rule 24(b), 18 U.S.C., in a criminal trial based on Title 18 U.S.C. § 1201, (known as the Federal Kidnapping Act), constitute grounds for a new trial where defense counsel (1) never objected to the impaneling of the jury, (2) to the Government's calling of any witness, or (3) to request twenty challenges, where the defendant in all other respects appears to have been given a fair and impartial trial?

The question of whether a defendant is entitled to these rights when prosecuted under an indictment based upon the Federal Kidnapping Act, where no harm was alleged to have resulted to the victim, was settled in the *negative* in this circuit by the case of United States v. Parker, 3 Cir., 1939, 103 F.2d 857; see also Brown v. Johnston, 9 Cir., 126 F.2d 727. In that case, Judge Maris stated that such a prosecution was not a "capital case" entitling the defendant to those special rights granted by 18 U.S.C. § 3432. The Supreme Court thereafter denied certiorari in that case. In the recent case of Smith v. United States, 1959, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041, the Supreme Court rejected this view by clear dictum, although the specific holding of the Smith case is that any prosecution under the Federal Kidnapping Act *must* proceed by indictment and not information regardless of whether or not there is an allegation of harm to the victim. The Court based this conclusion on the Fifth Amendment and Rule 7(b) of the Federal Rules of Criminal Procedure but broadened its holding by stating that for *all* purposes a suit under this Act must proceed as a capital case from the outset. In this regard, they specifically referred to the right of a defendant to a list of veniremen and Government witnesses three days prior to trial, Title 18 U.S.C. § 3432, and twenty peremptory challenges, Rule 24(b).

■ The question of what effect such dictum will have upon those convictions which occurred between the Parker case and the Smith case, in which one or more procedural rights specifically granted to an accused in a capital case have been *expressly* denied to a defendant happily need not be answered here. In our case the defendant never asserted a claim to these rights. Unlike the right to an indictment which the Court in the Smith case held could not be waived, there is clear Supreme Court authority to the contrary with regard to those rights granted by Title 18 U.S.C. § 3432. Hickory v. United States, 1893, 151 U.S. 303, 14 S.Ct. 334, 38 L.Ed. 170; Gordon v. United States, 1953, 53 App.D.C. 154, 289 F. 552; Aldridge v. United States, 1931, 60 App.D.C. 45, 47 F.2d 407, reversed on other grounds 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054. See also Logan v. United States, 1891, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429. (Both the Hickory and Logan cases dealt with what was formerly Section 3432, the language of each being almost identical.) By failing to object to any of the Government witnesses or to the impaneling of the jury, defendant cannot now object, particularly where hindsight has disclosed neither surprise to the defendant nor prejudice on the part of any juryman, the major reason for each of these procedural safeguards.

■ The same result must follow with regard to the ten extra peremptory challenges. Regardless of what defense counsel later may explain is the reason for his failure to exercise more than ten challenges, the record merely shows his failure to do so. This is explainable in one of three ways: (1) Counsel was in error as to the law in this matter (i. e., believing that this was not a "capital case" for the purpose of Rule 24(b)); (2) counsel inadvertently failed to recognize the facts as calling for such a right; or (3) felt it tactically more wise to exercise only that number of challenges. The third reason is certainly not grounds for a new trial since the law obviously does not purport to make the exercise of a certain number of challenges mandatory. The first and second reason alike do not constitute grounds for a new trial. It would be illogical to grant a new trial for every error defense counsel makes in the conduct of a trial, unless that error is likely to result in substantial harm to the defense or renders the defense of the accused a mockery of justice and fair play. On the contrary, to grant a new trial in this case, where the evidence is overwhelmingly in favor of defendant's guilt and the record indicates complete fairness to the defendant, would be a mockery of that justice and fair play to which the victims of this man's wrongdoing as well as the people of the United States are entitled.

Defendant's motion is hereby denied.