**UNITED STATES of America,**

v.

**Henry W. GRUNEWALD, Daniel A. Bolich and Max Halperin, Defendants.**

United States District Court
S. D. New York.

May 9, 1958.

Paul W. Williams, U. S. Atty., New York City, by Robert Kirtland and Robert B. Fiske, Jr., Asst. U. S. Attys., New York City, for the Government.

John C. Walsh, New York City, for defendant Henry W. Grunewald.

Rudolph Stand and Frank Aranow, New York City, for defendant Daniel A. Bolich.

Murray E. Gottesman, New York City, for defendant Max Halperin. Jack J. Elkin, New York City, of counsel.

HERLANDS, District Judge.

The question before the Court is the scope of the applicability of the Jencks case, Jencks v. U. S., 353 U.S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103, and the statute, 18 U.S.C. § 3500, enacted subsequent to the Jencks case, with respect to certain papers and records involved in this case now on trial.

The prosecution witness, Monroe Tobias, completed his direct examination yesterday. Immediately thereafter, and before cross-examination commenced, defense counsel moved to have the Court order the prosecution to produce all pretrial statements of the said witness in the possession of the United States.

Thereupon, and in open court, the assistant United States attorney in charge of this case turned over to each of defense counsel photostatic copies of the following documents:

1. Transcript of the testimony given by said witness, Monroe Tobias, on March 24, 1954 before the grand jury impaneled in and for the Southern District of New York.

2. Transcript of the testimony given by said witness, Monroe Tobias, on May 5, 1952, May 8, 1952 and May 27, 1952 before the grand jury impaneled in and for the Eastern District of New York.

With respect to the grand jury testimony on May 5, 1952 the assistant United States attorney stated in open court that the photostatic copy of the stenographic transcript for said date, as delivered to defense counsel, did not contain certain portions of the proceedings transpiring during the period stenographically recorded at pages 1287 to 1291 during the session of May 5, 1952; that the deleted portions did not contain testimony of the said witness, but in fact reflected proceedings that took place in the grand jury room while said witness was excused, and which proceedings represented executive proceedings on the part of the grand jury, as distinguished from the taking of testimony.

The full transcript of everything that transpired on May 5, 1952 has been furnished to the Court. The Court has examined said transcript and has concluded that the assistant United States attorney has properly caused to be excised from the copy of the transcript furnished to the defendants, those portions of the transcript at pages 1,287 to 1,291 which clearly relate to grand jury proceedings not involving the giving of testimony by the witness Monroe Tobias. There is not the slightest doubt about the fact that the excised portions have no testimonial value.

In response to inquiries made by the Court, the assistant United States attorney advised the Court and defense counsel that there were eight other papers relating to the witness Monroe Tobias in the file of the United States Attorney. It was the contention of the assistant United States attorney that these eight documents should not and could not properly be turned over to defense counsel because they did not come within the provisions of the statute, Title 18, section 3500, or the holding and rationale of the Jencks case.

Indeed, the prosecution takes the position that it was not required to turn over the aforementioned grand jury testimony, but that the prosecution has, nevertheless, done so, without thereby creating or establishing a precedent for

a similar course of conduct with respect to other Government witnesses who may hereafter be called in this case.

But with respect to the eight additional documents, the prosecution contends that, upon an inspection thereof by the Court, it will become manifestly clear that neither under the Jencks case nor under the statute should such additional documents be turned over to defense counsel.

Accordingly, the said documents were turned over to the Court. They have been closely examined by the Court.

Title 18, section 3500, is entitled "Demands for production of statements and reports of witnesses." Subsection (a) of said statute pertinently provides:

"In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

Subsection (b) of the statute relevantly provides:

"After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

Subsection (c) of the said statute sets up the procedure to be followed when the prosecution claims that any statement ordered to be produced contains matter which does not relate to the subject matter of the testimony of the witness.

Subsection (d) of the said statute describes the procedure to be followed if the prosecution should not comply with the Court's order.

Subsection (e) of the said statute relevantly provides:

"The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

The prosecution contends that the eight additional documents hereinabove referred to do not constitute a "statement" within the meaning and operation of the statute whose pertinent provisions have just been quoted.

The view advanced by the prosecution is not only supported by the explicit language of the statute, but by its legislative history. The Senate and House reports (U. S. Code Congressional and Administrative News, 85th Congress, First Session 1957, Volume 2, pp. 1861–1870) make it abundantly clear that "it is the specific intent of the bill to provide for the production only of written statements previously made by a Government witness in the possession of the United States which are signed by him or otherwise adopted or approved by him, and any transcriptions or recordings of oral statements made by the witness to a Federal law officer, relating to the matter as to which the witness has testified. The committee rejects, therefore, any interpretations of the Jencks decision which would provide for the production of the entire investigative files, grand jury tes-

timony, or similar materials." Page 1862.

In the Appendix to said reports, the Congressional committees approved the view expressed by District Judge George H. Moore, of the Eastern District of Missouri, that the rules of law requiring the production of a prosecution witness's statement in the possession of the United States relate only to statements that have either been written by the witness himself or "recorded by someone acting for the United States." The latter category "includes only continuous, narrative statements made by the witness recorded verbatim, or nearly so, and does not include notes made during the course of an investigation (or reports compiled therefrom) which contain the subjective impressions, opinions or conclusions of the person or persons making such notes." Pages 1865–1866.

As pointed out by District Judge Palmieri in United States v. Benson, D.C. S.D.N.Y.1957, 20 F.R.D. 602, 604–605:

> "Indeed, the very touchstone of the Jencks decision is the issue of credibility of the witness at the trial. Before the defense is entitled to disclosure of any statements made by a Government witness for the purpose of discrediting him, the credibility of the witness whose prior statements are sought must be in issue."

This clearly indicates that it is the witness's own statements that are involved, for only his own statements could serve the purpose of cross-examination on the issue of credibility.

Precisely the same view was expounded by Judge Bryan in United States v. Palermo, D.C.S.D.N.Y.1957, 21 F.R.D. 11, 13–14, namely, that the prior statements of a witness are to be utilized to impeach the credibility of a Government witness. Obviously, a witness cannot be impeached unless the prior statement is his statement. Cf. United States v. Sheba Bracelets, Inc., 2 Cir., 1957, 248 F.2d 134; United States v. Miller, 2 Cir., 1957, 248 F.2d 163.

We turn now to the statutory definition of the term "statement," quoted above. The eight additional documents submitted to the Court for examination are not written statements made by the witness nor are they signed or otherwise adopted by or approved by him. Moreover, none of the eight additional documents come within the alternative definition set forth under section 3500(e) (2), because none of these documents is "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

One of these documents purports to be a résumé of an interview with the witness. It is an interoffice memorandum setting forth the substance of the interview. It contains interpolated remarks and comments in addition to the summarization of what the witness said. It contains impressions on the part of the interviewer, and other similar material which clearly establishes that the memorandum is not a "statement of the witness." It is not signed or initialled by the witness and, as already stated, is a "statement of the witness." It is not signed or initialled by the witness, and as already stated, is a "to" and "from" interoffice memorandum.

The second document is another "to" and "from" interoffice memorandum. It purports to summarize an interview with the witness. It is denominated an "analysis of the interview." It is not signed or initialled by the witness.

The third document is another "to" and "from" interoffice memorandum. Like the previously mentioned documents, it is a synopsis of an interview with the witness. It is neither signed nor initialled by the witness. The person who dictated the memorandum refers to it as "my analysis of the interview."

The fourth document is another "to" and "from" interoffice memorandum,

likewise not signed or initialled by the witness. It is also entitled "analysis of the interview."

The fifth document consists of a typewritten transcription of notes taken by a special agent during an interview with the witness. It is a "to" and "from" interoffice memorandum. It includes matter in addition to a summarization of the gist of what the witness said. The memorandum is signed by the special agent. It is not signed or initialled by the witness.

The sixth document is another "to" and "from" interoffice memorandum of another interview with the witness. The memorandum is a dictated summary of the interview. It is signed by the special agent. It is not signed or initialled by the witness.

The seventh document is an office memorandum "for the files," prepared by a special agent, summarizing another interview with the witness. It is not signed or initialled by any one.

The eighth and last paper is another memorandum of an interview "for the files," and briefly summarizes the interview. It is not signed or initialled by anyone.

Thus, upon examination, all of the eight documents fail to come within the statutory definition of the term "statement." None of the documents is a stenographic transcription of the witness's oral statements; none of the documents is a substantial verbatim recital of such statements; and none of the documents constitutes a contemporaneous record of the making of the oral statement by the witness.

In the case at bar, the defendants' request is also predicated upon the argument "that the Jencks decision is broader than [section] 3500," and that "to the extent that section 3500 purports to restrict the Jencks case, it is unconstitutional" (trial minutes, pp. 392, 400–402).

This attack upon the constitutionality of section 3500 is clearly without merit. The Court finds that the statute is constitutional. In reaching this conclusion, it is necessary to point out that the Jencks decision is not founded on considerations of constitutional law. It is important to remember that the United States Supreme Court is not only expressly empowered by statute (18 U.S.C. § 3771) to prescribe rules of pleading, practice and procedure in the field of criminal law, but also is vested with a "supervisory authority over the administration of criminal justice in the federal courts." McNabb v. United States, 1942, 318 U.S. 332, 341, 63 S.Ct. 608, 613, 87 L.Ed. 819.

The pronouncements of the United States Supreme Court clearly express that Court's sensitive concern with such matters (e. g., McNabb v. United States, supra; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; Benanti v. United States, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126).

The Jencks decision may, perhaps, be taken as another manifestation of a doctrinal trend on the part of the United States Supreme Court to liberalize the rules of criminal law procedure and administration in their impact upon defendants. But it does not follow that such liberalism is founded exclusively or necessarily upon constitutional law. As pointed out by Mr. Justice Frankfurter in the McNabb case, the Supreme Court

"* * * has, from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions. (Citing cases.) And in formulating such rules of evidence for federal criminal trials the Court has been guided by considerations of justice not limited to the strict canons of evidentiary relevance.

"Quite apart from the Constitution, therefore, we are constrained to hold that the evidence elicited from the petitioners in the circumstances disclosed here must be excluded."

Finally, it should be stated that the holding of the Jencks case is much narrower than defense counsel herein imply.

Accordingly, the defendants' application for examination of said eight additional documents is denied in all respects. The eight documents will, however, be preserved for possible availability to the appellate court. To that end the Court hereby directs the clerk to impound such documents and to keep them intact in a sealed envelope, subject only to the right of the prosecution to have photostatic copies made of said documents, under the supervision of the clerk.