# PITTSBURGH PLATE GLASS CO. *v.* UNITED STATES.

No. 489.  Argued April 28, 1959.—Decided June 22, 1959.*

*Leland Hazard* argued the cause for petitioner in No. 489.  With him on the brief were *Cyrus V. Anderson* and *James B. Henry, Jr.*

*Together with No. 491, *Galax Mirror Co., Inc., et al.* v. *United States,* also on certiorari to the same Court, argued April 29, 1959.

*H. Graham Morison* argued the cause for petitioners in No. 491. With him on the brief were *Samuel K. Abrams* and *Robert M. Lichtman.*

*Philip Elman* argued the causes for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Hansen, Daniel M. Friedman, Richard A. Solomon, Samuel Karp* and *Ernest L. Folk III.*

MR. JUSTICE CLARK delivered the opinion of the Court.

Petitioners stand convicted on a single-count indictment charging a conspiracy under § 1 of the Sherman Act. They contend that the trial judge erred in refusing to permit them to inspect the grand jury minutes covering the testimony before that body of a key government witness at the trial. The Court of Appeals affirmed the convictions, 260 F. 2d 397. With reference to the present claim, it held that Rule 6 (e) of the Federal Rules of Criminal Procedure [1] committed the inspection or not of grand jury minutes to the sound discretion of the trial judge,

---

[1] "Rule 6. The Grand Jury.

"(e) Secrecy of Proceedings and Disclosure. Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons."

and that in this instance, no abuse of that discretion had been shown. We granted certiorari limited to the question posed by this ruling. .358 U. S. 917, 918. We conclude that in the circumstances of this case the trial court did not err in refusing to make. Jonas' grand jury testimony available to petitioners for use in cross-examination.

The indictment returned in the case named as defendants seven corporations, all manufacturers of mirrors, and three of their officers. However, only three of the corporations are petitioners here, along with one individual, J. A. Messer, Sr. The indictment charged a conspiracy to fix the price of plain plate glass mirrors sold in interstate commerce. It is not necessary for our purposes to detail the facts of this long trial, the record of which covers 860 pages. It is sufficient to say that the Government proved its case through 10 witnesses, the last of whom was Jonas. He was President of a large North Carolina mirror manufacturing company and had a reputation for independence in the industry. Although neither he nor his corporation was indicted, the latter was made a co-conspirator. The evidence indicates that the conspiracy was consummated at two meetings held on successive days during the week of the annual meeting of the Mirror Manufacturers Association in 1954 at Asheville, North Carolina. Jonas, not being a member of the Association, did not attend the convention. Talk at the convention regarding prices culminated in telephone calls by several representatives of mirror manufacturers to Jonas concerning his attitude on raising prices. On the day following these calls Jonas and three of the participants in the conspiracy met at an inn away from the convention headquarters and discussed "prices." Within three days thereafter each of the manufacturers announced an identical price increase, which was approximately 10 percent. Jonas' testimony, of course, was confined to the telephone calls and the meeting at the inn

where the understanding was finalized. The Government admits that he was an "important" witness. However, proof of the conspiracy was overwhelming aside from Jonas' testimony. While he was the only witness who characterized the outcome of the meetings as an "agreement" on prices, no witness negatived this conclusion and the identical price lists that followed the meeting at the inn were little less than proof positive.

After the conclusion of Jonas' testimony, defense counsel interrogated him as to the number of times he appeared and the subject of his testimony before the grand jury. Upon ascertaining that Jonas had testified three times on "the same general subject matter," counsel moved for the delivery of the grand jury minutes. He stated that the petitioners had "a right . . . to inspect the Grand Jury. record of the testimony of this witness after he has completed his direct-examination" relating to "the same general subject matter" as his trial testimony.[2] As authority for "the automatic delivery of Grand Jury transcripts" under such circumstances counsel cited *Jencks* v. *United States,* 353 U. S. 657 (1957). As previously indicated, the motion was denied.

It appears to us clear that *Jencks* v. *United States, supra,* is in nowise controlling here. It had nothing to do with grand jury proceedings and its language was not intended to encompass grand jury minutes. Likewise, it is equally clear that Congress intended to exclude those minutes from the operation of the so-called Jencks Act, 71 Stat. 595, 18 U. S. C. (Supp. V, 1958) § 3500.[3]

Petitioners concede, as they must, that any disclosure of grand jury minutes is covered by Fed. Rules Crim. Proc. 6 (e) promulgated by this Court in 1946 after the

---

[2] The fact that the trial testimony and that before the grand jury included the same "subjects" or related to "the same general subject matter" is not contested.

[3] See S. Rep. No. 981, 85th Cong., 1st Sess.; 103 Cong. Rec. 15933.

approval of Congress. In fact, the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge.[4] Our cases announce the same principle,[5] and Rule 6 (e) is but declaratory of it.[6] As recently as last Term we characterized cases where grand jury minutes are used "to impeach a witness, to refresh his recollection, to test his credibility and the like" as instances of "particularized need where the secrecy of the proceedings is lifted discretely and limitedly." *United States* v. *Procter & Gamble,* 356 U. S. 677, 683 (1958).

Petitioners argue, however, that the trial judge's discretion under Rule 6 (e) must be exercised in accordance with the rationale of *Jencks;* namely, upon a showing on cross-examination that a trial witness testified before the grand jury—and nothing more—the defense has a "right" to the delivery to it of the witness' grand jury testimony.

This conclusion, however, runs counter to "a long-established policy" of secrecy, *United States* v. *Procter & Gamble, supra,* at 681, older than our Nation itself. The reasons therefor are manifold, *id.,* at 682, and are compelling when viewed in the light of the history and *modus operandi* of the grand jury. Its establishment in the Constitution "as the sole method for preferring charges in serious criminal cases" indeed "shows the high place it [holds] as an instrument of justice." *Costello* v. *United States,* 350 U. S. 359, 362 (1956). Ever since this action

---

[4] *E. g., United States* v. *Spangelet,* 258 F. 2d 338; *United States* v. *Angelet,* 255 F. 2d 383; *United States* v. *Rose,* 215 F. 2d 617, 629; *Schmidt* v. *United States,* 115 F. 2d 394; *United States* v. *American Medical Assn.,* 26 F. Supp. 429.

[5] *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150 (1940). And see *United States* v. *Procter & Gamble Co.,* 356 U. S. 677 (1958); *United States* v. *Johnson,* 319 U. S. 503, 513 (1943).

[6] See Notes of the Advisory Committee on Rules, following Rule 6, Fed. Rules Crim. Proc.

by the Fathers, the American grand jury, like that of England, "has convened as a body of laymen, free from technical rules, acting in secret, pledged to indict no one because of prejudice and to free no one because of special favor." *Ibid.* Indeed, indictments may be returned on hearsay, or for that matter, even on the knowledge of the grand jurors themselves. *Id.*, at 362, 363. To make public any part of its proceedings would inevitably detract from its efficacy. Grand jurors would not act with that independence required of an accusatory and inquisitorial body. Moreover, not only would the participation of the jurors be curtailed, but testimony would be parsimonious if each witness knew that his testimony would soon be in the hands of the accused. Especially is this true in antitrust proceedings where fear of business reprisal might haunt both the grand juror and the witness. And this "go slow" sign would continue as realistically at the time of trial as theretofore.

It does not follow, however, that grand jury minutes should never be made available to the defense. This Court has long held that there are occasions, see *United States* v. *Procter & Gamble, supra,* at 683, when the trial judge may in the exercise of his discretion order the minutes of a grand jury witness produced for use on his cross-examination at trial. Certainly "disclosure is wholly proper where the ends of justice require it." *United States* v. *Socony-Vacuum Oil Co., supra,* at 234.

The burden, however, is on the defense to show that "a particularized need" exists for the minutes which outweighs the policy of secrecy. We have no such showing here. As we read the record the petitioners failed to show any need whatever for the testimony of the witness Jonas. They contended only that they had a "right" to the transcript because it dealt with subject matter generally covered at the trial. Petitioners indicate that the trial judge required a showing of contradic-

tion between Jonas' trial and grand jury testimony. Such a preliminary showing would not, of course, be necessary.  While in a colloquy with counsel the judge did refer to such a requirement, we read his denial as being based on the breadth of petitioners' claim.  Petitioners also claim error because the trial judge failed to examine the transcript himself for any inconsistencies.  But we need not consider that problem because petitioners made no such request of the trial judge.  The Court of Appeals apparently was of the view that even if the trial judge had been requested to examine the transcript he would not have been absolutely required to do so.  It is contended here that the Court of Appeals for the Second Circuit has reached a contrary conclusion.  *United States v. Spangelet,* 258 F. 2d 338.  Be that as it may, resolution of that question must await a case where the issue is presented by the record.  The short of it is that in the present case the petitioners did not invoke the discretion of the trial judge, but asserted a supposed absolute right, a right which we hold they did not have.  The judgment is therefore

*Affirmed.*

Mr. Justice Brennan, with whom The Chief Justice, Mr. Justice Black and Mr. Justice Douglas join, dissenting.

In the words of the Court of Appeals, Jonas was the Government's "principal prosecuting witness." [1]  He was President of Lenoir Mirror Company, which company was

---

[1] Jonas was the only witness to testify that the defendants had actually agreed to a uniform price increase.  Furthermore, his testimony was necessary to refute other testimony that the President of petitioner Galax Mirror Co., Inc., had stated that he would follow his pricing policy regardless of what the other manufacturers did.  Jonas' testimony was also instrumental in connecting petitioner Pittsburgh Plate Glass Co. to the price-fixing agreement.

a participant in the alleged price-fixing conspiracy, but was not indicted. After Jonas testified on direct examination defense counsel asked for the production of his relevant grand jury testimony. The trial judge immediately made clear his intention not to grant the motion: "Unless you can show some sound basis that contradicts between what happened in the Grand Jury room and his testimony before the Grand Jury and his testimony in this trial, I am not going to require the production of the Grand Jury records. It would be easy for any attorney to get access to the records of the Grand Jury by just such a motion as you are making here." Defense counsel protested, "we are not attempting that. We want just a transcript of his testimony before the Grand Jury *regarding the subjects to which he has testified on direct examination.*" (Emphasis supplied.) This request thus encompassed all of Jonas' grand jury testimony only if all of that testimony covered the subject matter of Jonas' trial testimony. The court replied, "You have stated what you want to ask him and I am denying your right to do it." Plainly defense counsel were not asking to see the minutes of the entire grand jury proceedings, nor even of all of Jonas' testimony before the grand jury unless all of it was on the same subject matter as his trial testimony. Their motion was carefully limited to a request for so much of Jonas' grand jury testimony as "covered the substance of his testimony on direct examination." This request that secrecy be "lifted discretely and limitedly," *United States* v. *Procter & Gamble,* 356 U. S. 677, 683, necessarily implied a request that the trial judge inspect the grand jury minutes and turn over to the defense only those parts dealing with Jonas' testimony on the same subject matter as his trial testimony. In this posture, then, the question for our decision is the narrow one whether the trial judge erred in denying the defense request for inspection of the grand jury testimony of a

key government witness which covered the subject matter of that witness' trial testimony.[2] I dissent from the Court's affirmance of the trial judge's ruling denying this carefully circumscribed request.

Grand jury secrecy is, of course, not an end in itself. Grand jury secrecy is maintained to serve particular ends. But when secrecy will not serve those ends or when the advantages gained by secrecy are outweighed by a countervailing interest in disclosure, secrecy may and should be lifted, for to do so in such a circumstance would further the fair administration of criminal justice. See *McNabb* v. *United States,* 318 U. S. 332. It is true that secrecy is not to be lifted without a showing of good reason, but it is too late in the day to say, as the Court as a practical matter does here, that the Government may insist upon grand jury secrecy even when the possible prejudice to the accused in a criminal case is crystal clear and none of the reasons justifying secrecy is present. "[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 234. Thus grand jury minutes have been made available to a defendant accused of committing perjury before the grand jury so that he could adequately prepare his defense, *United States* v. *Remington,* 191 F. 2d 246; *United States* v. *Rose,* 215 F. 2d 617, and to a defendant who can show an inconsistency between the trial testimony and grand jury testimony of a government witness, *United States* v. *Alper,* 156 F. 2d 222; *Burton* v. *United States,* 175 F. 2d 960; *Herzog* v. *United States,* 226 F. 2d 561; *United States* v. *H. J. K. Theatre Corp.,* 236 F. 2d 502. On occasion the Government itself has recognized the fairness of permitting the defense access to the grand jury testimony of

---

[2] As the Court points out, discovery of grand jury minutes is not affected by the *Jencks* statute, 18 U. S. C. (Supp. V) § 3500.

government witnesses even though it considered that it was not bound to do so, *United States v. Grunewald,* 162 F. Supp. 621. This Court has implied that grand jury minutes, would be discoverable by a defendant in a civil antitrust suit instituted by the Government on a showing of "particularized need," *United States v. Procter & Gamble,* 356 U. S. 677, 683.[3] Nor can we overlook that the Government uses grand jury minutes to further its own interests in litigation. It is apparently standard practice for government attorneys to use grand jury minutes in preparing a case for trial, see *United States v. Procter & Gamble,* 356 U. S. 677, 678, in refreshing the recollection of government witnesses at trial, see *United States v. Socony-Vacuum Oil Co.,* 310 U. S. 150, 233, and, when the need arises, in impeaching witnesses at trial, see *United States v. Cotter,* 60 F. 2d 689. Of course, when the Government uses grand jury minutes at trial the defense is ordinarily entitled to inspect the relevant testimony in those minutes. *United States v. Socony-Vacuum Oil Co.,* 310 U. S. 150, 233; *United States v. Cotter,* 60 F. 2d 689. Indeed, Rule 6 (e) of the Federal Rules of Crim-

---

[3] *United States v. Procter & Gamble,* upon which the Court relies, actually is authority for permitting discovery in this case. The Court in that case recognized that grand jury minutes were discoverable where the need outweighed the advantages of secrecy, but held that such was not the case in the circumstances because, unlike this case, *Procter & Gamble* concerned a demand for a transcript of the entire grand jury proceedings to be used in pretrial preparation of a civil suit. This case, of course, concerns a demand for discovery of a particular witness' relevant testimony for use on cross-examination at trial in a criminal prosecution. The Court specifically stated in *Procter & Gamble:* "We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like. Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly." 356 U. S., at 683.

inal Procedure itself recognizes that grand jury testimony is discoverable under appropriate circumstances.[4]

The Court apparently agrees with the conclusion compelled by these precedents, for its opinion states that grand jury minutes are discoverable when " 'a particularized need' exists for the minutes which outweighs the policy of secrecy." But the Court pays only lip service to the principle in view of the result in this case. It is clear beyond question, I think, that the application of that principle to this case requires a holding that Jonas' grand jury testimony is discoverable to the limited extent sought. Since there are no valid considerations which militate in favor of grand jury secrecy in this case, simple justice requires that the petitioners be given access to the relevant portions of Jonas' grand jury testimony so that they have a fair opportunity to refute the Government's case.

Essentially four reasons have been advanced as justification for grand jury secrecy.[5] (1) To prevent the accused from escaping before he is indicted and arrested or from tampering with the witnesses against him. (2) To prevent disclosure of derogatory information presented to the grand jury against an accused who has not been indicted. (3) To encourage complainants and witnesses to come before the grand jury and speak freely without fear that their testimony will be made public thereby subjecting them to possible discomfort or retaliation. (4) To encourage the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments during the proceedings.

---

[4] See *United States* v. *Alper*, 156 F. 2d 222, 226; *In re Bullock*, 103 F. Supp. 639.

[5] See *United States* v. *Rose*, 215 F. 2d 617, 628–629; *United States* v. *Amazon Industrial Chemical Corp.*, 55 F. 2d 254, 261; 8 Wigmore, Evidence (3d ed. 1940), § 2360.

None of these reasons dictates that Jonas' grand jury testimony, to the limited extent it is sought, should be kept secret. The Court, while making obeisance to "a long-established policy" of secrecy, makes no showing whatever how denial of Jonas' grand jury testimony serves any of the purposes justifying secrecy. Certainly disclosure at this stage of the proceedings would not enable the defendants to escape from custody or to tamper with the witness who has already testified against them on direct examination. Certainly, also, protection of an innocent accused who has not been indicted has no bearing on this case. Discovery has been sought only of Jonas' grand jury testimony on the same subject matter as his testimony at trial. This testimony will have condemned someone to whom he did not refer at trial only if he has concealed information at the trial, and this creates the very situation in which it is imperative that the defense have access to the grand jury testimony if we are to adhere to the standards we have set for ourselves to assure the fair administration of criminal justice in the federal courts. Similarly, disclosure of Jonas' relevant grand jury testimony could not produce the apprehended results of retaliation or discomfort which might induce a reluctance in others to testify before grand juries. Jonas has already taken the stand and testified freely in open court against the defendants. His testimony has been extremely damaging. Disclosure of his testimony before the grand jury is hardly likely to result in any embarrassment that his trial testimony has not already produced. "If he tells the truth, and the truth is the same as he testified before the grand jury, the disclosure of the former testimony cannot possibly bring to him any harm . . . which his testimony on the open trial does not equally tend to produce." 8 Wigmore, Evidence (3d ed. 1940), § 2362, at 725. Witnesses before a grand jury necessarily know that once called by the Government to testify at trial they cannot

remain secret informants quite apart from whether their grand jury testimony is discoverable. Finally, the defense seeks nothing which would disclose the votes or opinions of any of the grand jurors involved in these proceedings. All that is sought is the relevant testimony of Jonas. If there are questions by grand jurors intertwined with Jonas' testimony disclosure of which would indicate the jurors' opinions or be embarrassing to them, the names of the grand jurors asking the questions can be excised. Cf. *United States* v. *Grunewald*, 162 F. Supp. 621.

Plainly, then, no reason justifying secrecy of Jonas' relevant grand jury testimony appears. The Court's insistence on secrecy exalts the principle of secrecy for secrecy's sake in the face of obvious possible prejudice to the petitioners' defense against Jonas' seriously damaging testimony on the trial. Surely "Justice requires no less," *Jencks* v. *United States*, 353 U. S. 657, 669, than that the defense be permitted every reasonable opportunity to impeach a government witness, and that a criminal conviction not be based on the testimony of untruthful or inaccurate witnesses. The interest of the United States in a criminal prosecution, it must be emphasized, "is not that it shall win a case, but that justice shall be done." *Berger* v. *United States*, 295 U. S. 78, 88.

Obviously the impeachment of the Government's key witness on the basis of prior inconsistent or contradictory statements made under oath before a grand jury would have an important effect on a trial. Thus it has long been held that a defendant may have access to inconsistent grand jury testimony for use in cross-examination if he can somehow show that an inconsistency between the trial and grand jury testimony exists. *United States* v. *Alper*, 156 F. 2d 222; *Burton* v. *United States*, 175 F. 2d 960; *Herzog* v. *United States*, 226 F. 2d 561; *United States* v. *H. J. K. Theatre Corp.*, 236 F. 2d 502. But in an analogous situation we have pointed

out the folly of requiring the defense to show inconsistency between the witness' trial testimony and his previous statements on the same subject matter before it can obtain access to those very statements. In *Jencks* v. *United States,* 353 U. S. 657, we said that it offers no protection to permit a defendant to obtain inconsistent statements to impeach a witness unless he may inspect statements to determine if in fact they are inconsistent with the trial testimony. We said in *Jencks:*

"Requiring the accused first to show conflict between the reports and the testimony is actually to deny the accused evidence relevant and material to his defense. The occasion for determining a conflict cannot arise until after the witness has testified, and unless he admits conflict, as in *Gordon,* [*Gordon* v. *United States,* 344 U. S. 414] the accused is helpless to know or discover conflict without inspecting the reports. A requirement of a showing of conflict would be clearly incompatible with our standards for the administration of criminal justice in the federal courts and must therefore be rejected." 353 U. S., at 667–668.

The considerations which moved us to lay down this principle as to prior statements of government witnesses made to government agents obviously apply with equal force to the grand jury testimony of a government witness. For the defense will rarely be able to lay a foundation for obtaining grand jury testimony by showing it is inconsistent with trial testimony unless it can inspect the grand jury testimony, and, apparently in recognition of this fact, the Court holds today that a preliminary showing of inconsistency by the defense would not be necessary in order for it to obtain access to relevant grand jury minutes. It is suggested by the Government, however, that rather than permit the defense to inspect the

relevant grand jury minutes for possible use on cross-examination, the trial judge should inspect them and turn over to the defense only those portions, if any, that the *judge* considers would be useful for purposes of impeachment. This procedure has sometimes been utilized in the past as a way to limit discovery of grand jury minutes. See *United States* v. *Alper,* 156 F. 2d 222; *United States* v. *Consolidated Laundries,* 159 F. Supp. 860. But we pointed out in *Jencks* the serious disadvantages of such a procedure and expressly disapproved of it. We said:

> "Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony.

> ". . . We hold . . . that the petitioner is entitled to inspect the reports to decide whether to use them in his defense. Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less." 353 U. S., at 667–669.

From Jonas' own admission it appears that his grand jury testimony covered the subject matter of his trial testimony. The reasons for permitting the defense counsel rather than the trial judge to decide what parts of that testimony can effectively be used on cross-examination are certainly not less compelling than in regard to the FBI reports involved in *Jencks.* For grand jury

testimony is often lengthy and involved, and it will be extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the grand jury testimony that would be useful in impeaching a witness. See *United States* v. *Spangelet*, 258 F. 2d 338. His task should be completed when he has satisfied himself what part of the grand jury testimony covers the subject matter of the witness' testimony on the trial, and when he has given that part to the defense. Then the defense may utilize the grand jury testimony for impeachment purposes as it may deem advisable in its best interests, subject of course to the applicable rules of evidence.

I would reverse the Court of Appeals and order a new trial for failure of the trial judge to order the production of Jonas' relevant grand jury testimony.