Billy Shupps **POLLARD**, a/k/a Billy Shups Pollard, Defendant-Appellant,

v.

**UNITED STATES** of America, Plaintiff-Appellee.

No. 18524.

United States Court of Appeals, Seventh Circuit.

April 15, 1971.

Rehearing Denied May 3, 1971.

William C. Erbecker, James Manahan, Paul V. Rumple, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., Paul E. Peach, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KILEY, Circuit Judge.

A jury convicted defendant Pollard under two indictments,[1] charging burglary of a bank, 18 U.S.C. § 2113(b), and conspiracy to dispose of stolen travelers checks knowing they were stolen, 18 U.S.C. § 371.[2] The court imposed consecutive sentences of eight years on the burglary charge and five years on the conspiracy charge. Pollard has appealed. We affirm.

The evidence against Pollard is overwhelming: The Citizens State Bank in Mount Summit, Indiana was burglarized some time before 8 a. m. on November 29, 1968. The crime was perpetrated by a "burning bar" safe-breaking method in which the safebreaker becomes covered with soot. A quantity of American Express Company Travelers Checks were taken. Pollard, on the morning of November 29, went to the home of Samuel Gaddis, a neighbor of Pollard's, "covered with soot," and holding a packet of American Express Travelers Checks. Pollard then paid a bondsman for a bond for the release of David Hedstrom from jail on a different charge. Pollard, Gaddis and Hedstrom thereafter went to Detroit where they cashed several of the travelers checks and divided the money. The checks were identified as part of those stolen from the bank.

Pollard contends here that the district court committed prejudicial error (a) in a statement it made in denying his motion for the production of Hedstrom's grand jury testimony and in the ruling itself, (b) in questioning a government witness in aid of the government's proof, thus showing partiality in denial of a fair trial, and (c) in admitting an American Express investigative report under the Shopbook Exception to the Hearsay Rule of Evidence.

I.

Pollard's trial attorney requested production of the grand jury testimony of Hedstrom, co-defendant under the conspiracy indictment, on the basis of a written communication from him that if he were called as a witness he would testify favorably to Pollard. The government attorney stated to the court that none of Hedstrom's grand jury testimony was favorable to Pollard.

After the government attorney's statement, the court read Hedstrom's grand jury testimony *in camera* and confirmed the statement. The court then said, outside the presence of the jury, that nothing was favorable to Pollard and "On the contrary, I found it would swing him if he testifies. * * *" The court declined to rule in advance whether if Hedstrom was called by Pollard and was cross-examined on the grand jury testimony, Pollard could then see the grand jury material.

We see no merit in the argument that the court erred in refusing to disclose to defendant the grand jury testimony of Hedstrom. It is well established that "[g]rand jury testimony is ordinarily confidential," United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 233, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940), and that its secrecy "must not be broken except where there is a compelling [need] * * * shown with

---

1. The indictments were consolidated for trial.

2. The conspiracy indictment named Pollard, David LeRoy Hedstrom and Samuel Grant Gaddis.

particularity." United States v. Procter & Gamble, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). And where disclosure is permitted, it is to be done "discreetly and limitedly." *Id.*

■■ The burden is on the defendant to show that a " 'particularized need' exists for the transcript which outweighs the policy of secrecy." Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400, 79 S.Ct. 1237, 1241, 3 L.Ed.2d 1323 (1959). Here, defendant's showing of need was limited to ascertaining whether Hedstrom gave evidence which incriminated the defendant in order to determine whether to call him as a witness. The trial court examined the transcript *in camera,* concluded that the testimony was highly damaging to defendant, and so advised defense counsel. We have examined the transcript ourselves and agree with its conclusion. Consequently, the court did not abuse its discretion in denying defendant access to Hedstrom's testimony.

Defendant's reliance on Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), for the proposition that an *in camera* inspection of the transcript by the court is not a sufficient substitute for inspection by the defendant, is misplaced. In *Dennis,* defendant sought the grand jury testimony of a witness who had testified at trial for impeachment purposes. The Court found a prticularized need was shown and that an *in camera* inspection by the trial court would not suffice since only defendant and his counsel would have the time and knowledge for inspecting the transcript for inconsistencies. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), also has no application, since the

question there concerned the adequacy of an *in camera* inspection of *oral* eavesdropping to determine whether Alderman's conviction was tainted by the illegal eavesdropping.

Defendant also argues that the trial court's refusal to disclose the Hedstrom transcript violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* requires disclosure by the government of evidence favorable to defendant. As noted before, we have examined the Hedstrom transcript, sealed and certified to us as part of the record, and agree with the district court that the transcript contained no evidence favorable to the defendant, but rather incriminated him with respect to both counts of the indictment.

■■ We also see no merit in the claim of error in the court's refusal to rule in advance upon a situation that might not—and did not—arise. Defendant cites no authority for the contrary proposition. Nor is there any merit in the argument that the "swing him" statement of the court prejudicially assumed Pollard's guilt in violation of the innocent-until-proven-guilty rule.

## II.

■ There is no merit in the claim that the district court judge made a "vigorous attempt" to aid the government in qualifying government witness Kosinski—manager of American Express Company Traveler Check Department— to establish admissibility of a government exhibit, in violation of Canon 15 of the Canons of Judicial Ethics.[3] The judge stated in response to Pollard's motion for mistrial—out of the jury's. hearing—that "the court's questions were purely preliminary, and indulged in in

3. Canon 15 reads, in pertinent part, as follows :

A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses * *

may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto. Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition.

the effort to move the case to a conclusion." The judge's questioning was done after he had prodded the government attorney "to get right to it" in qualifying the witness. The judge sustained Pollard's objection to several government questions in this examination. And the court eventually found upon Pollard's objection that Kosinski was not qualified as custodian of records from which a summary had been made. We think the contention that judge was not impartial is frivolous.

### III.

Pollard contends the court erred in admitting over his objection the American Express Company record of a loss of travelers checks suffered by the burglarized bank, as an exception to the hearsay rule. The record in dispute was made by witness Caparros, custodian of the record, and his superior Day, from a telephone report from the bank, from data processing records and from the American Express "Selling Agent's Supply Stock Record." [4] Pollard argues, on authority of Palmer v. Hoffman, 318 U. S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), that the record is inadmissible being an investigative compilation made from American Express records. He asserts that the basic Selling Agent's Supply Stock Record, instead of the "summary investigative report," should have been introduced.

The qualification of Caparros and the record itself showed that the record was made routinely by those whose function was to make it, and it was kept in the regular course of business by Caparros. Pollard concedes that American Express Company's regular course of business was to consign blank travelers checks to banks and to pay the bank cashing the checks the face value. That business necessarily entails a system of accounting for outstanding checks, whether paid or stolen. The Company maintains

these records, not for the purpose of future litigation, but for the purpose of maintaining control over their records. The record was accordingly admissible. 28 U.S.C. § 1732.

Palmer v. Hoffman, *supra*, is inapplicable. In *Palmer* the Supreme Court held that a railroad engineer's report two days after a railroad accident was not sufficiently related to the railroad's routine business so as to carry the trustworthiness that would justify admissibility of the exhibit. The American Express record, on the other hand, was directly related to the bank's routine business, namely, accounting for outstanding checks.

For the reasons given, the conviction is affirmed.

---

4. This record indicated the amount of checks charged to the bank at the date of the robbery. This, together with data processing records of checks which had been retailed and the bank's report of checks sold prior to the burglary, made up the record admitted into evidence.