**In re GRAND JURY MATTER.**

**Grand Jury No. 83–241–2.**

United States District Court,
E.D. Pennsylvania.

March 13, 1986.

James G. Sheehan, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Louis J. Ruch, McBride, Ruch & Gontram, Philadelphia, Pa., for DiDomenico.

MEMORANDUM OF DECISION

McGLYNN, District Judge.

Before the court is a dispute over the release of the business records belonging to Robert J. DiDomenico which are presently in the possession of the grand jury. The Justice Department has concluded its investigation and declined prosecution and Mr. DiDomenico asks the court to order that the documents be returned to him. The United States Attorney, however, wants permission to turn the documents over to the Inspector General, General Services Administration for use in an ongoing civil investigation. For the reasons that follow, I will direct the United States Attorney to release the documents to the Inspector General.

In 1979, Mr. DiDomenico filed a claim against the General Services Administration ("GSA") for the costs he incurred in repairing and renovating certain office space for use by the United States Forest Service. A hearing was held before the General Services Board of Contract Appeals. On October 5, 1982, the Board decided that Mr. DiDomenico was entitled to

a recovery and remanded the case to GSA's contracting officer for a determination of the amount. At the request of GSA, Mr. DiDomenico furnished GSA a cost estimate of his claim.[1] GSA thereupon undertook an audit of the costs incurred by Mr. DiDomenico including those costs reflected in his estimate. On April 22, 1983, the Inspector General issued a subpoena for Mr. DiDomenico's business records with respect to the property in question. Shortly after the issuance of this subpoena, however, the Inspector General issued a subpoena for Mr. DiDomenico's business records with respect to the property in question. Shortly after the issuance of this subpoena, however, the Inspector General referred the matter to the Justice Department for a criminal investigation. A grand jury subpoena for these documents was upheld by this court after a hearing on October 24, 1983.

The issue before this court is whether the Inspector General can enforce its April 23, 1983 subpoena now that the Justice Department has completed its investigation.

### I.

Enshrined in our Constitution, the grand jury has always served an important function in our justice system, *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983); *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and the Supreme Court has been zealous in protecting its freedom and integrity. Fundamental to the proper functioning of the grand jury is the requirement that its proceedings remain secret. *United States v. Sells Engineering, supra,* 463 U.S. at 424, 103 S.Ct. at 3138; *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979). This tradition of secrecy has been codified in

Rule 6(e) of the Federal Rules of Criminal Procedure. Rule 6(e) prohibits grand jurors, government attorneys and their assistants as well as other personnel attached to the grand jury from disclosing "matters occurring before the grand jury."

Rule 6(e) is important not only to protect the freedom and integrity of the deliberation process, but also for the integrity of the system itself. In *United States v. Sells Engineering, Inc., supra,* the Supreme Court held that Justice Department attorneys in a civil suit would not be afforded automatic access to grand jury materials but would be required to move for court ordered disclosure upon a showing of a particularized need under Rule 6(e)(3)(C)(i). The Court specifically expressed its concern that the "grand jury's powerful investigative tools [not be used] to root out additional evidence useful in a civil suit, [nor be used] to start or continue a grand jury inquiry where no criminal prosecution seemed likely." *Id.* 463 U.S. at 432, 103 S.Ct. at 3142.

Conversely, the integrity of the system requires that civil discovery not be undertaken for the benefit of a criminal prosecution. In *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Court created a prophylactic rule against the enforcement of an IRS summons after the Service has recommended to the Justice Department that a criminal prosecution be undertaken. Without such a restraint, the Court reasoned that "effective use of information to determine civil liability would inevitably lead to criminal discovery" thereby improperly enlarging "the Justice Department's right of criminal litigation discovery or ... infring[ing] upon the role of the grand jury as the principal tool of criminal accusation." *Id.* at 312, 98 S.Ct. at 2365.

In defining the policy of secrecy, the United States Court of Appeals for the Third Circuit has held that Rule 6(e)(2) "ap-

---

**1.** Mr. DiDomenico claims that an estimate was required because the books and records of these

transactions were partially destroyed by a fire in March of 1978.

plies to anything which may reveal what occurred before the grand jury." *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 63 (3d Cir.1982); *In re Grand Jury Investigation (Rittenhouse Consulting Enterprises, Ltd.)*, 630 F.2d 996, 1000 (3d Cir.1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). This secrecy, however, is not absolute. As the court in *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960), noted:

> [I]t is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclose that the same documents had been, or were presently being examined by the grand jury.

■ Touching on this point, the Court of Appeals for the Seventh Circuit noted, " '[G]rand jury secrecy' is no magical incantation making everything connected with the grand jury's investigation somehow untouchable." *In re Grand Jury (Mara)*, 454 F.2d 580, 583 (7th Cir.1971), *rev'd on other grounds sub nom., United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). In general, therefore, Rule 6(e) does not apply to materials created for purposes independent of the grand jury investigation. Indeed, in *In re Grand Jury Matter (Catania), supra*, at 64, the Third Circuit held that disclosure of information obtained from a source independent of the grand jury proceedings, although prepared with the purpose of ultimately using it before the grand jury, was independent of the proceedings and, thus, outside the scope of Rule 6(e).

■ In the present case, the business records sought by the Inspector General are clearly documents created independent of the grand jury investigation. In no way will their disclosure impinge upon the secrecy of the grand jury's deliberations.[2] The Inspector General seeks disclosure not to gather information concerning the grand jury proceedings, but for their intrinsic value. Accordingly, no question of "disclosure of matters occurring before the grand jury" is involved and Rule 6(e) is inapplicable. *See In re Grand Jury Matters (Catania), supra*, at 64; *In re Grand Jury Investigation (Rittenhouse)*, 630 F.2d at 1000.

## II.

■ The court's inquiry, however, does not end with the determination that these documents are beyond the parameter of Rule 6(e). Documents produced pursuant to a grand jury subpoena remain the property of the person producing them. *United States v. Interstate Dress Carriers, Inc., supra*, at 54; *Matter of Special Grand Jury Almond Pharmacy, Inc.*, 753 F.2d 575, 579 (7th Cir.1985); *United States v. Penrod*, 609 F.2d 1092, 1097 (4th Cir. 1979) *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). Inspections of those documents by persons other than the grand jury or prosecuting attorneys requires either the consent of the owner or court order after an opportunity for a hearing. *United States v. Interstate Dress Carriers, supra; Matter of Special Grand Jury (Almond Pharmacy, Inc.), supra.* Before issuing such an order, the court must determine whether independent legal authority provides a basis for permitting the Inspector General to inspect these business records.

■ Here, the Inspector General Act of 1978 establishes the required independent

---

**2.** The original GSA audit was assigned to Glenn Merski of the Inspector General's Office. Mr. Merski subsequently served as an agent of the grand jury and continued as an auditor. Accordingly, Mr. Merski is bound by the secrecy requirements of Rule 6(e) and is to serve no role in the continuation of the civil investigation.

legal basis for permitting the Inspector General to inspect these business records. The Act authorizes the Inspector General to make investigations and audits relating to GSA programs in order to promote efficiency and to prevent fraud and abuse. 5 U.S.C. App. § 4(a)(1) & (3). For purposes of conducting these investigations, the Inspector General is authorized to require by subpoena the production of all information, documents, reports, answers, records and other data and documentary evidence necessary in the performance of the functions assigned by the Act. 5 U.S.C. App. § 6(a)(4). The Inspector General's subpoena in the present case is not only within the bounds of relevant inquiry but is perhaps critical to its investigation.

Mr. DiDomenico objects to the enforcement of the subpoena on the ground that the Inspector General recommended a criminal investigation to the Justice Department. Mr. DiDomenico's reliance on *United States v. LaSalle National Bank, supra*, however, is misplaced. In *LaSalle*, the Supreme Court held that an I.R.S. summons is not enforceable after the Service has recommended to the Justice Department that a criminal prosecution be undertaken. It is at that point, the Court noted, that "the criminal and civil aspects of a tax fraud case begin to diverge." *Id.* 437 U.S. at 311, 98 S.Ct. at 2365. Here, the Justice Department has completed its investigation and declined prosecution and, thus, the divergence between the civil and criminal aspects of the case has disappeared. Hence, the fear that civil discovery might be a pretext for criminal investigation is without foundation. Indeed, the documents in the requested subpoena are presently in the possession of the grand jury. Accordingly, I will direct the United States Attorney to permit the Inspector General of the GSA to have access to the business records of Robert DiDomenico identified in the subpoena of April 22, 1983, with the provision that Robert DiDomenico first be supplied with a detailed inventory of the records.