NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0926n.06

No. 12–3686

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Oct 29, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHN PAUL WEBER, III, | ) | |
| | ) | |
| Petitioner – Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| TIMOTHY E. BUCHANAN, | ) | |
| | ) | OPINION |
| Respondent – Appellee. | ) | |
| | ) | |

Before: ROGERS, STRANCH, and DONALD, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge. John Paul Weber, III, an Ohio inmate convicted by

a jury of felony murder and other crimes, appeals the denial of his petition for a writ of habeas

corpus under 28 U.S.C. § 2254. He argues that his Sixth Amendment rights were violated when the

trial court refused to provide him with the grand jury testimony of a key prosecution witness for use

in cross-examining that witness. Because the district court properly denied the habeas petition, we

AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

On the evening of July 9, 2006, Weber and several others beat a man to death. Weber was

indicted and tried separately. In April 2007, a jury convicted him of two counts of kidnaping and

one count each of robbery, murder, tampering with evidence and obstructing justice. The trial court

imposed a sentence of nineteen years to life imprisonment.

-1-

On direct appeal, Weber argued that the trial court erred when it refused, during cross-examination of prosecution witness Cynthia Ryan, to provide him with a copy of Ryan's grand jury testimony, even though she had reviewed the grand jury transcript to refresh her recollection before testifying at trial. The record shows that the trial court directed the prosecutor to provide the court *in camera* with a copy of the grand jury transcript and a statement Ryan gave to the police. After review of these documents, the court refused to provide the grand jury testimony to Weber, even though the court found some minor inconsistencies between Ryan's trial and grand jury testimony. The court allowed Weber to cross-examine Ryan on the statement she gave to the police.

On direct appeal from the conviction, the Ohio Court of Appeals affirmed, ruling that the trial court did not abuse its discretion in denying Weber access to the grand jury transcript because Weber did not show a particularized need for it. *State v. Weber*, No. 22167, 2008 WL 3199504, at *2–3 (Ohio Ct. App. Aug. 8, 2008). Finding any discrepancies in Ryan's trial and grand jury testimony to be "trivial," the court of appeals ruled that any error in the trial court's handling of the matter was harmless beyond a reasonable doubt. *Id.* at *3. The Ohio Supreme Court declined review, *State v. Weber*, No. 2008-1841, 900 N.E.2d 199 (Ohio Jan. 28, 2009), and the Ohio Court of Appeals subsequently denied Weber's *pro se* motion for reconsideration in February 2009.

In the federal habeas petition, Weber asserted that his lack of access to Ryan's grand jury testimony violated his Sixth Amendment confrontation rights. The district court denied the petition on the ground that no Supreme Court case suggested Weber's Sixth Amendment rights were violated, but in any event, any constitutional error was harmless because it did not have a substantial and injurious effect or influence on the jury's verdict. *Weber v. Warden, Warren Corr. Inst.*, 886

F. Supp. 2d 749, 754–57 (S.D. Ohio Apr. 11, 2012). The district court granted Weber a certificate of appealability on this issue.

## II. STANDARD OF REVIEW

We review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[1] 28 U.S.C. § 2254(d)(1). Under AEDPA, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (per curiam) (quoting *Harrington*, 131 S. Ct. at 786–87).

---

[1]Weber does not argue that the state court's decision resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in a state court proceeding. 28 U.S.C. § 2254(d)(2).

## III. ANALYSIS

The "starting point" for § 2254(d)(1) habeas cases "is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). We may not employ circuit precedent "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule" that the Supreme Court "has not announced." *Id.* at 1450.

The Confrontation Clause protects criminal defendants in two ways: by granting "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (plurality opinion). Weber alleges a violation of each right.

He first argues that he was denied the right to confront the witness under *Crawford v. Washington*, 541 U.S. 36 (2004). Weber alleges that before taking the witness stand at trial, Ryan refreshed her recollection with the grand jury testimony, effectively replacing her actual recollection of events with a recitation of the grand jury testimony that he did not have an opportunity to cross-examine. But Weber did not exhaust the *Crawford* claim on direct appeal or in his state post-conviction actions and the claim is now procedurally defaulted. "Default is excused if the petitioner demonstrates: (1) cause for the default and prejudice flowing therefrom; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice." *Franklin v. Bradshaw*, 695 F.3d 439, 449 (6th Cir. 2012). Because Weber has not made either showing to excuse the procedural default, we do not address the merits of the *Crawford* claim.

As to the claim relating to the scope of cross-examination, Weber has not cited a case in which the Supreme Court squarely held in a § 2254 habeas proceeding that a trial court's refusal to disclose grand jury testimony used to refresh recollection violates the Sixth Amendment. *See Middlebrooks v. Bell*, 619 F.3d 526, 542–43 (6th Cir. 2010) (finding no clearly established Supreme Court case holding that trial court's failure to order disclosure of confidential hospital records violated petitioner's confrontation rights), *cert. granted, judgment vacated on other grounds*, *Middlebrooks v. Colson*, 132 S. Ct. 1791 (2012). Supreme Court cases decided in other contexts, however, suggest that Weber may have been entitled to review and utilize Ryan's grand jury testimony during cross-examination.

In a federal prosecution, the Supreme Court stated that "[g]rand jury testimony is ordinarily confidential . . . [b]ut after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233–34 (1940). The Court has further explained that use of grand jury testimony to impeach a witness, to refresh recollection, or to test credibility constitutes a "particularized need where the secrecy of the proceedings is lifted discretely and limitedly." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958). *See also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959). In *Davis v. Alaska*, 415 U.S. 308, 309 (1974), a state criminal case, the defendant sought to probe the bias of a key prosecution witness by asking him about his juvenile probationary status, but that information was confidential under state law. Because "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," the Court ruled that the State's policy interest in protecting the confidentiality of juvenile records "cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse

-5-

witness." *Id.* at 316, 320. The Court has also recognized that its rulings in *Socony-Vacuum Oil Co.*, *Procter & Gamble Co.*, and *Pittsburgh Plate Glass Co.* are "entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States*, 384 U.S. 855, 870 (1966). Yet, the Court has been equally clear that the Confrontation Clause does not preclude a trial judge from placing limits on cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir. 1989). The Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

During Weber's trial, the court did not prohibit all inquiry into potential inconsistencies in Ryan's statements. The court allowed Weber to cross-examine Ryan about the statement she gave to the police. Even if we assume without deciding that the trial court should have disclosed Ryan's grand jury testimony to Weber, any error in the state court proceeding was harmless because it did not have a "substantial and injurious effect" on the jury's verdict. *See Fry v. Pliler*, 551 U.S. 112, 120 (2007); *Isaac v. Grider*, No. 98-6376, 2000 WL 571959, at *8–9 (6th Cir. May 4, 2000) (finding Sixth Amendment error under *Davis* in § 2254 habeas case, but ruling any error was harmless). Weber urges us to apply the harmless error test from *Chapman v. California*, 386 U.S. 18 (1967), and *Eddleman v. McKee*, 471 F.3d 576 (6th Cir. 2006). But in *Fry*, the Supreme Court adopted the "substantial and injurious effect" standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), for § 2254 habeas cases, and we apply that standard here.

Having compared Ryan's testimony before the grand jury with her testimony before the petit jury, we agree with the state courts that there were no significant differences. Ryan's answers on

cross-examination about the statement she gave to the police provided the jury "enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Dorsey*, 872 F.2d at 167.  Thus, this Sixth Amendment claim lacks merit.

## IV.  CONCLUSION

Weber's claim under *Crawford* is procedurally defaulted, and his inability to impeach Ryan with her grand jury testimony did not have a "substantial and injurious effect" on the jury's verdict to warrant habeas relief.  Accordingly, we AFFIRM the judgment of the district court.